**MEYER, Plaintiff-Appellant, v. RENNER COMPANY, Defendant-Appellee.**

Ohio Appeals, Seventh District, Mahoning County.

No. 3434.   Decided October 17, 1951.

357

Schermer, Goldstein & Millstone, Clyde W. Osborne, Youngstown, for plaintiff-appellant.

W. P. Barnum, Youngstown, for defendant-appellee.

## OPINION

By PHILLIPS, J.

In this opinion plaintiff, an individual, will be called plaintiff, and defendant, a corporation, will be designated as defendant.

On November 29, 1946, the parties entered into a written contract of employment by the terms of which plaintiff agreed to become an executive officer of defendant corporation in charge of operation for a term of three years commencing January 1, 1947, and ending December 31, 1949.

Defendant agreed to pay plaintiff a salary of $10,000.00 a

year, and an incentive bonus on production by defendant corporation of more than 70,000 barrels of beer in any calendar year during the existence of such contract; and an additional incentive bonus, provision for which was made in such contract as follows:—

"(b) Fifteen percent (15%) of the net earnings derived from the operation of the brewery for the fiscal year in excess of an amount equal to ten cents (10c) per share on the outstanding capital stock at the close of the fiscal year. Provided, however, that in no event shall the payment of the said fifteen percent (15%) bonus reduce the amount available for common dividends to less than ten cents (10c) per share on the said capital stock, and if necessary the said bonus shall be reduced to make available such amount. 'Net earnings' as herein used means the earnings of the Company for the fiscal year before Federal Income, surtax and excess profits taxes.

"The maximum compensation to be paid the Executive for salary and bonus shall be Forty Thousand Dollars ($40,000) per year."

During the year 1947 defendant expended $53,000.00 in constructing a garage for housing vehicles used in the operation of its brewery. Twenty-nine thousand nine hundred thirty-six dollars and forty-six cents of that amount was expended in payment of damages to adjoining property owners resulting therefrom. Six thousand five hundred dollars of that amount was recovered by settlement of defendant's claim upon a bond purchased by it to protect it in such construction.

During the year 1947 defendant paid plaintiff the yearly contract agreed salary of $10,000.00 and a bonus of $6,098.83 on "earnings derived from operation of the brewery."

Plaintiff claimed he was entitled to a bonus of 15% of the claimed net earnings from the operation of the brewery amounting to $70,595.31, or $10,589.30 for his services for the year 1947; that being paid $6,098.83 he was entitled to receive an additional amount of $4,490.47, to recover which amount he sued defendant in the court of common pleas.

After both parties moved for directed verdicts in their favors the trial judge charged the jury generally, and then arrested the case from its consideration, discharged it, found for the plaintiff in the sum of $975.00, which was 15% of $6,500.00, the amount of money recovered on the bond to which reference is made supra, and entered judgment upon his finding.

Plaintiff appealed from that judgment to this court on questions of law, and by assignments of error contends that "the court of common pleas erred in refusing to grant plaintiff-appellant's request for separation of witness; the court of

common pleas erred in the admission of incompetent and irrelevant testimony on the part of defendant-appellee over the objection of plaintiff-appellant; the court of common pleas erred in the refusal to admit competent and relevant testimony on the part of the plaintiff-appellant; the decisions, orders and judgment of the court of common pleas are not sustained or supported by sufficient or proper evidence; the decisions, orders and judgment of the court of common pleas are against the greater weight of the evidence; the decisions, orders and judgment of the court of common pleas are contrary to law; the court of common pleas erred in its findings of fact and conclusions of law; the court of common pleas erred in overruling plaintiff-appellant's motion for judgment in his favor in the amount of $4,490.00 with interest from January 1, 1948, notwithstanding the verdict"; and "the court of common pleas erred in overruling the motion of plaintiff-appellant for a new trial."

The question presented to us by plaintiff's appeal is whether the amount of $29,936.42, to which reference has been made, should be deducted from defendant's agreed net operating income of $121,895.31 as cost of the operation of the brewery for the year 1947 or should be charged to defendant's plant upkeep account.

Defendant contends that such amount should be so deducted; and plaintiff claims that it should be charged to defendant's plant upkeep, and arrives at the amount claimed due him by the following computation set forth in his brief:—

"Net earnings derived from the operation of the brewery for the fiscal year    $121,895.31
Less 10c per share    51,300.00

Remainder of net earnings from operation of brewery    $ 70,595.31
15% of $70,595.31    $ 10,589.30
Bonus paid    6,098.83

Bonus unpaid    $ 4,490.47"

Plaintiff contends that the words of the contract "15% of the net earnings derived from the operation of the brewery" mean what they say, "net earnings" of the defendant and not "net profits or losses."

In a report to the stockholders of defendant corporation, signed by the plaintiff, he stated:—

"The net profit after depreciation and taxes for the year of 1947 is after deducting $29,936.46 to cover the expense incurred in rear of property due to land slide which required the

removal of excess earth, the purchase and spreading of slag and the repair to hospital building. This reduced our 1947 federal income taxes by $11,375.85. The net charge off of $18,560.61 for this extraordinary maintenance was the equivalent of 3.61 cents per share."

We believe the trial judge arrived at a correct conclusion with reference to the deduction of this amount from defendant's agreed net operating income of $121,895.31.

Plaintiff's request for a separation of witnesses was granted. However the trial judge permitted defendant's auditor witness, a certified public accountant, who does not devote his entire time to defendant's business and is not an executive officer thereof, to remain in the court room, allegedly in violation of the court's order of separation of witness, which defendant contends constitutes prejudicial and reversible error.

The trial judge did not err to plaintiff's prejudice in permitting defendant's auditor to remain in the court room though he testified as a witness, for the reason that his presence was essential to defendant's counsel to assist him in the defense of such case; and for the further reason that plaintiff's objection to the witness remaining in the court room was clearly a matter within the sound discretion of the trial judge, which discretion he did not abuse.

The plaintiff contends the trial judge admitted evidence prejudicially erroneously, as shown by the following excerpts from the bill of exceptions:—

"Q. Referring back to Plaintiff's Exhibit 2 is there any item on that statement showing the net operating—net earnings derived from the operation of the brewery?

"Judge Barnum: I object; now we are coming to the crucial part. The gentleman has testified that his contract provides for a bonus based upon 'net earnings' and he is now attempting to compare the meaning of the phrase 'net earnings' with the phrase in the audit of 'net operating income,' which are not synonymous.

"Court: Objection sustained.

"Mr. Schermer: Well, I beg to differ, if the court please.

"Court: I have ruled on it and I don't want to argue about it.
\* \* \*

"Q. When it came to computing your 15% bonus did you have any conversations with anyone regarding the figure that was going to be used?

"Judge Barnum: I object for this reason, that under the contract identified by the gentleman, a provision is made as

to the manner in which that bonus shall be figured, to-wit, upon the company's annual audit, and that is controlling.

"Court: Objection sustained with an exception to the plaintiff.

* * *

"Q. And do you know on what figures he computed the bonus?

"Judge Barnum: I object; that would be hearsay.

"Q. Did Mr. Jones tell you what figures he computed the bonus on?

"A. Yes.

"Judge Barnum: Objection.

"Court: Isn't Mr. Jones' own testimony on that what you want?

"Mr. Schermer: Well, I think he has a perfect right to testify as to his conversation with Mr. Jones, especially as the court has permitted Mr. Jones to remain in the court room as an officer.

"Judge Barnum: He is allowed to remain in the court room for my information.

"Mr. Schermer: He certainly has a right to testify to those conversations.

"Court: I can't tell exactly the import of your question; you may be getting into a field where you are attempting to vary a written contract by some oral conversations.

"Mr. Schermer: No, I merely want to show what we contend it should be computed on and what Mr. Jones told Mr. Meyer what he was computing it on.

"Judge Barnum: I make my objection so that the record may remain clear. I am making my objection principally upon the thought that plaintiff's petition in this case does not attack the validity or good faith of the audit in question; it would be an entirely different kind of a lawsuit if an attack were made on it and therefore if no attack is made upon that audit then it is immaterial what Jones said it was based on and has no right to be considered.

"Court: I am inclined to agree with you on that; in the state of the pleadings here I can't see how you can go into that line of testimony.

"Q. Mr. Meyer—

"Court: Wait a minute, do you want an exception?

"Mr. Schermer: I don't need an exception, Your Honor.

"Court: It is up to you; I am just trying to be helpful to you.

* * *

"Q. That clause, net earnings as herein used, means the earnings of the earnings of the company for the fiscal year before federal income surtax and excess profit taxes; did your previous contracts all read that way?

"Judge Barnum: I object.

"Court: Objection sustained.

"Q. What was the reason, if you know, why that clause was put in the contract?

"Judge Barnum: I object.

"Court: Objection sustained.

* * *

"Q. Do you know the purpose for which it was spread?

"A. Yes, the purpose for buying and spreading the slag was to keep the hill from sliding any further.

"Court: He may answer.

"Q. Go ahead.

"A. My understanding is that the biggest portion of this slag is on neighboring property but that the toe of the slag pile or slag heap is on the property of the Renner Company and that toe, as I understand it, is almost up against the garage building.

"Mr. Schermer: I object and ask to have it stricken out; he is testifying from his understanding, Your Honor.

"Judge Barnum: Testifying from his knowledge of the record.

"Court: I understand that he is testifying from his knowledge; now maybe that had better be made definite; he said he understands: I understood he was testifying from his own knowledge. Will you ask that specifically?

"Q. The facts you have just testified to, were they within your own personal knowledge?

"A. Well, Judge, I am not a civil engineer and the information I have testified to is the information given me by the officers of the company in the course of my audit for the year 1947.

"Court: It may remain; go ahead.

"A. Then in this schedule, Defendant's Exhibit 2, which totals $29,936.46 there is another item or a series of items classified as repairs to building owned by the Youngstown Hospital Association, $5,653.76, and the total of those three classifications is $29,936.46 and each of the classifications is further detailed as to the different items of expense involved.

"Q. Again as to this sum of 29,000 plus, is that any part of the cost of the construction of the so-called garage?

"A. No, in making our audit we analyzed all the disbursements and expenses pertaining to this particular problem and

then used our discretion and our knowledge as to what items should go into the garage; those itemized as capital we didn't treat as an expense; then all these other items we call maintenance we charged off as expense.

"Mr. Schermer: I object; all this is hearsay.

"Judge Barnum: Offer it as expert testimony.

"Court: It comes under the heading of expert testimony and expert testimony, some of it is based upon the immediate personal knowledge of the witness and some of it is based on information which he has secured to enable him then in the light of an expert to apply that knowledge and it may be admitted under the second classification, with exceptions, to the plaintiff."

The plaintiff claims that the latter testimony was based upon hearsay and not admissible as violative of the hearsay evidence rule.

Further plaintiff contends the trial judge erred to his prejudice in the admission of the following testimony elicited by cross-examination of plaintiff relating to earnings under contracts with defendant previous to the one in question:—

"Q. What was your total salary in 1946?

\* \* \*

"A. Well, I think I got a bonus of somewhere around $20,000.

"Q. In other words, what you are saying, a total of about $30,000?

"A. Yes.

"Q. And that would be '46; and in 1945 about the same?

"A. No, I got less in '45.

"Q. About how much in '45 total salary?

"A. I don't remember, I think it was about it seems to me I got about $13,000 bonus.

"Q. How much?

"A. About 13 or 14,000, I don't remember the figure.

"Q. What would your average bonus be in the last three years before '47, what would your average bonus or incentive salary be in say the 3 years preceding '47?

"A. Preceding '47?

"Q. That is right.

"A. I would say somewhere around $20,000.

"Q. So that in sum and substance and talking only in approximate figures your total salary from the Renner Company for say '45, '6 and '7 was in the neighborhood of $30,000?

"A. Yes.

"Q. Is that right?

"A. That is correct."

Further plaintiff contends the trial judge erred to his prejudice in refusing to admit the following testimony offered by plaintiff on re-direct examination:—

"Q. That clause, net earnings as herein used, means the earnings of the company for the fiscal year before federal income surtax and excess profit taxes; did your previous contracts all read that way?

"Judge Barnum: I object.

"Court: Objection sustained.

"Q. What was the reason, if you know, why that clause was put in the contract?

"Judge Barnum: I object.

"Court: Objection sustained.

"Q. In your previous contracts did it provide you were to be paid after the computation of taxes?

"Judge Barnum: I object.

"A. Yes.

"Court: Objection sustained."

Finally under this assigned ground of error plaintiff contends that the trial judge erred to his prejudice in allowing defendant's auditor witness to testify as follows:—

"Q. Can you tell us from your record—we have already had some evidence that the years '44, '45, '46 and '47— what amounts were paid to Mr. Meyer by way of basic and incentive compensation if any,—'44, how much?

"A. In the year 1944 his basic salary was $10,000 and his bonus or incentive was $12,840 64, making a total of $22,840.64.

"Q. In '45?

"A. In '45 his basic salary was $10,000, his bonus and/or incentive was $20,523.94, making a total of $30,523.94.

"Q. 1946?

"A. '46 his basic salary was $10,000, his bonus or incentive was $33,283.90, making a total of $43,283.90.

"Q. And '47 you have given us. 10,000 plus $6,098.83.

"A. That is right, a total of $16,098.83.

* * *

"Q. Very little change; and the conditions and clauses put in this contract of November 29, 1946 in your recollection are the same as appeared in the previous contracts?

"Judge Barnum: I object, being immaterial.

"Court: Sustained.

"Q. Was there any change in the contract of November 29, 1946 as distinguished from the contract just prior to that?

"Judge Barnum: I object.

"Court: Sustained.

"Q. Isn't it a fact that in the contract of November 29, 1946 that you changed it, limiting the amount of earnings Mr. Meyer could receive under the contract?

"Judge Barnum: I object, immaterial.

"Court: Sustained."

A study of these assigned grounds of error forces us to conclude that the trial judge did not err to plaintiff's prejudice as urged therein.

The bill of exceptions discloses that counsel for the respective parties waived their right to argue to the jury. Thereupon the trial judge proceeded to charge the jury and then the following colloquy between the trial judge and counsel occurred:—

"Now does counsel desire the court to instruct the jury as to the verdict or submit it to the jury on this one phase? Will you come to the bench just a minute, both of you? (Both sides confer with the court)

"Let the record show counsel for the plaintiff and counsel for the defendant at this time waive the right to the submission of the issues to the jury and consent to the dismissal of the jury and that the issues be determined by the court."

Thereupon the trial judge excused the jury and took the case under advisement:

Counsel for plaintiff complains of the manner employed by the trial judge in disposing of this phase of the case, and by brief say:—

"Finally we call to the court's attention the court's handling of the motions made at the close of this case. Both plaintiff and defendant moved the court for a directed verdict. These motions threw the case into the court's hands and took it away from the jury. Yet, as the court will note, the court below took that as merely a waiver of argument and proceeded to instruct the jury. It was only after the jury had been instructed that the court realized that the case was left with it."

Plaintiff has nothing of which to complain. He was not prejudiced by the foregoing action of the trial judge.

Now considering plaintiff's assignments of error that "the decisions, orders and judgment of the court of common pleas are not sustained or supported by sufficient or proper evidence, are against the greater weight of the evidence and are contrary to law." We find no merit in these assignments of error because the amount upon which plaintiff claims compensation was a valid current expense for payment of damages and not for capital improvement.

The trial court did not err "in its finding of fact and conclusions of law," nor in overruling the plaintiff-appellant's motion for judgment in his favor in the amount of $4490.00 with interest from January 1, 1948, notwithstanding the finding of the court.

Since we have found that the trial judge committed no error prejudicial to plaintiff in any of the respects he urged it is obvious we conclude he did not err in overruling plaintiff's motion for new trial.

The judgment of the court of common pleas is affirmed.

NICHOLS, PJ, concurs in judgment.
GRIFFITH, J, concurs.