CITY OF EUCLID, APPELLEE, *v.* FITZTHUM ET AL., APPELLANTS.

(No. 34380—Decided February 26, 1976.)

*Messrs. Baker, Hostetler & Patterson, Mr. Richard R. Hollington, Jr.,* and *Mr. Thomas M. Seger,* for appellants.
*Mr. Patrick R. Rocco, Mr. David J. Lombardo* and *Mr. Neil Myers,* for appellee.

DAY, J. These cases were consolidated for trial. Each of these defendants was found guilty of violating a Euclid ordinance proscribing the parking or storage of trailers unless parked or stored in enclosed structures. The defendants appeal under a single number and each raises the identical issues on appeal. There are four assignments of error:

*"Assignment of Error No. 1*

"The Trial Court erred in finding the defendants guilty because Section 1377.06, as applied to each of the defendants herein, bears no substantial relation to the pro-

motion of the health, safety, morals and welfare of the citizens of the City of Euclid and, therefore, is unconstitutional as applied.''

*"Assignment of Error No. 2*

''The Trial Court erred in finding the defendants guilty because Section 1377.06 has been applied by City officials in an arbitrary, unreasonable, and discriminatory manner to defendants and in an unequal and discriminatory manner as between defendants and the owners of other campers, trucks, boats, and other vehicles which fall within the purview of the Section.''

*"Assignment of Error No. 3*

''The Trial Court committed prejudicial error by directing defendants' expert witnesses to remove themselves from the courtroom upon defendants' motion for separation of public official witnesses.''

*"Assignment of Error No. 4*

''The Trial Court committed prejudicial error by denying the defendants the right to cross-examine adverse public official witnesses and by permitting the prosecution to examine these witnesses as on cross-examination.''

For reasons assessed below the judgments against the defendants in this appeal must be reversed.

## I.

Assignments Nos. 1 and 2 raise the same generic issue —whether Section 1377.06[1] of the codified ordinances of Euclid is constitutional as applied to these defendants. The constitutional claim has two parts. One contention is that the ordinance as applied here has no substantial relationship to health, safety, morals and welfare. The other asserts that the ordinance has been applied to these defendants in an arbitrary, unreasonable and discriminatory manner.

---

[1]Section 1377.06:

"No person shall park or store any type of truck, trailer, auto trailer or trailer coach in a U1, U2, or U3 use district either on public or private property (including the public street or highway), except to make pickups or deliveries, unless such truck, trailer, house trailer, auto trailer or trailer coach is *parked* or *stored in a completely enclosed structure*." (Emphasis supplied.)

We have had occasion to uphold this same ordinance against a claim of unconstitutionality on its face, *City of Euclid* v. *Paul* (1974, Ct. of App., 8th Dist., Case No. 33024, Mot Cert. Den. 1974). However, Assignments of Error Nos. 1 and 2 demonstrate that the current challenge is based on different grounds.

## II.

Five decades ago the Supreme Court of the United States testing another Euclid ordinance set down the general principles for measuring municipal enactments by Federal Due Process standards:

". . . before the ordinance can be declared unconstitutional . . . such provisions [must be] clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare. . . ."[2] (Brackets supplied.)

Approximately six months earlier the Ohio Supreme Court had expressed the same Due Process sentiments in upholding a zoning ordinance against federal and state constitutional attack:

". . . If the ordinance discloses no purpose to prevent some public evil or to fill some public need, and has no real or substantial relation to public health, morals, and safety, it must be held void. When, however, legislation does have a real and substantial relation to the prevention of conditions detrimental to the public health, morals, or safety, no matter how unwise the measure itself seems to individual judges, it is not for the judicial tribunals to nullify it upon constitutional grounds." (citations omitted.)[3]

## III.

It is enough to justify legislative intervention that there is an evil for which legislation may rationally supply a correction.[4]

However, despite wind signs and even some cases to

---

[2]*Euclid* v. *Ambler Realty Co.* (1926), 272 U. S. 365, 395, 71 L. Ed. 303, 314.

[3]*Pritz* v. *Messer* (1925), 112 Ohio St. 628, 639.

[4]*Williamson* v. *Lee Optical of Oklahoma* (1955), 348 U. S. 483, 488, 99 L. Ed. 563, 572.

the contrary in other jurisdictions, *Westfield Motor Sales Co. v. Town of Westfield* (1974), 324 A. 2d 113, 119; *People v. Goodman* (1972), 31 N. Y. 2d 262, 266-267, it is still the Ohio rule that zoning restrictions for purely esthetic reasons are unconstitutional.[5] However, it seems both clear and logical that an otherwise valid exercise of the police power need not be a constitutional failure because it incidentally beautifies. Cf. *Lionshead Lake, Inc.,* v. *Wayne Twp.* (1952), 10 N. J. 165, 172, and concurring opinion at 176-177 App. Dism. (1952), 344 U. S. 919, 97 L. Ed. 708.

In determining whether a statute or ordinance satisfies constitutional requisites it is common to find Equal Protection considerations commingled with Due Process issues. Frequently, if not always, police power regulation involves classification. If the process of classifying is unreasonable, there are obvious overlapping considerations of Due Process and Equal Protection. Because the concepts tend to run into each other, they are discussed together.

As a preliminary to that discussion we note that in this case we are not considering a classification involving a right so fundamental that the category is suspect.[6] Therefore, the City need not show a compelling state interest to justify the classification.[7] Equal Protection considerations are satisfied "if any state of facts reasonably may be conceived to justify" them.[8] Of course, Equal Protection requires that regulatory legislation regulate impartially, *Yick Wo* v. *Hopkins* (1886), 118 U. S. 356, 373-374, 30 L. Ed. 220, 227.

## IV.

The vice of the present ordinance is that the record

---

[5] *Youngstown* v. *Kahn Bldg. Co.* (1925), 112 Ohio St. 654, 657-658.

[6] Cf. *NAACP* v. *Alabama* (1958), 357 U. S. 449, 460-462, 2 L. Ed. 2d 1488, 1498-1499 (right to association); *Loving* v. *Virginia* (1967), 388 U. S. 1, 11-12, 18 L. Ed. 2d 1010, 1017-1018; and *Griswold* v. *Connecticut* (1965), 381 U. S. 479, 485-487, 14 L. Ed. 2d 510, 515-517 (right to family privacy).

[7] *Shapiro* v. *Thompson* (1969), 394 U. S. 618, 634, 638, 22 L. Ed. 2d 600, 615, 617.

[8] Cf. *McGowan* v. *Maryland* (1961), 366 U. S. 420, 425-426, 6 L. Ed. 2d 393, 399.

will support neither an application of the ordinance which bears a substantial, and therefore reasonable, relationship to public health, safety, morals or welfare nor the imposition of a taxonomic scheme based on any state of facts that may reasonably justify it. Part of the lack of reasonableness is exposed by evidence of an uneven regulatory application which contravenes the imperatives of the *Yick Wo* case.

A short review of the facts will illustrate the constitutional inadequacies of the ordinance.

The operative element in the enactment is the requirment that trucks, trailers, house trailers, auto trailers, or trailer coaches not be parked in the proscribed zones unless parked or stored in a "completely enclosed structure."[9] The evidence indicates that whatever factors detrimental to public health, safety, morals or welfare inhere in parking the designated vehicles in the open, these factors are not bettered, and may be worsened, by enclosing them.

There was testimony in support of the regulation that a trailer parked in a driveway would interfere with access for fire fighting equipment (Tr. 119, 148, 250, 311), that it would serve as a conduit for fire (Tr. 88, 147, cf. 324), that a trailer was more difficult to move than a car (Tr. 96, 312, 318), that trailers parked in residential areas lowered property values (Tr. 263-264, 275) and, if parked in driveways with attached garages, would extend over the property lines of the houses and create safety hazards by obstructing the view of street traffic (Tr. 306). There was also a rather consistent incidental theme of esthetic detriment running through the testimony of a number of witnesses for the City (see, p. e., Tr. 41, 87, 111, 241, 267, 282).

This evidence standing alone would seem to warrant upholding the ordinal regulation. And, in the light of credibility and fact-finding functions of the trier of the facts (in this case the court) it is no rebuttal of this conclusion

---

[9]All the defendants in these appeals owned camper trailers (Tr. 10-20). A claimed truck violation was the subject of a separate appeal.

302

to point to conflicting testimony.[10] The responsibility of the judge to determine credibility also disposes of conflicting testimony respecting esthetic considerations (cf. Tr. 242).

Where, then, are the Due Process and Equal Protection vices of the ordinance? They lie in the indisputable fact that enclosing vehicles classified as trailers does not change the fire hazard propensities; does not enlarge health safeguards. Indeed, it is clear beyond peradventure that enclosure may diminish health and safety factors by trapping sewage spillage from portable sanitary facilities (Tr. 335, 349, 350) and collecting highly flammable escaping propane gas which would otherwise be dissipated in the air (Tr. 333, 348). These are factors too obvious to be resolved on mere credibility determinations. They point up the arbitrariness and unreasonableness of the attempt to regulate. Uncontravertible evidence also supports the Equal Protection violation in requiring vehicles in the trailer classification to be enclosed. This evidence is to be found in omission of boats from the proscription unless parked on trailers—despite the obvious fact that non-trailer boat parking so decreases mobility that a boat so stationed is a greater safety hazard than one capable of movement on wheels.

This posture of the evidence leads us to conclude that the ordinance as applied contravenes both Due Process and Equal Protection and is void. Assignments of Error Nos. 1 and 2 have merit. Accordingly, the convictions of these defendants are invalid.

### V.

Assignment of Error No. 3 travels on the assumption that it is prejudicial error for a trial court to subject expert witnesses to the banishment consequent upon the granting of a motion for a separation of a particular cate-

---

[10]The evidence was that automobiles could be conduits for fire (Tr. 90), may be just as difficult to move as trailers if locked (Tr. 250), may impede fire fighting (Tr. 250), cause fire hazards (Tr. 308, 324), and be unsightly when stored ouside (Tr. 242).

gory of witness. In this instance, the defendants' motion to separate all public official witnesses resulted in an order directing all witnesses other than the complaining witnesses and the defendants "to remove themselves and remain out of the hearing of the court until such time as you are called to testify" (Tr. 105-107).[11] The defense argues but does not demonstrate how this deprivation of the counsel of its experts, if there was a deprivation,[12] prejudiced it.

The separation of witnesses during trial is a matter within the discretion of the trial court, see *Piening* v. *Titus, Inc.* (1960), 113 Ohio App. 532, 537. We see no occasion for a different rule for expert witnesses, cf. *Meyer* v. *Renner Co.* (App. 1951), 63 Ohio Law Abs. 356, 360, absent a showing which would render the exclusion an abuse of discretion. There is no such demonstration of abuse in this record.

The third assignment of error is without merit.

## VI.

Assignment of Error No. 4 is based on the trial court's refusal to allow the defendants to cross-examine public officials responding to defense subpoenas.

No case has been cited or found applying Ohio Revised Code §2317.07 (as amended) to a criminal prosecution. In any event, the defendants' praecipe did not specify that the witnesses under order were to appear for cross-examination (cf. also Tr. 98).

Of course, the defendants were free to examine the subpoened officials as on cross had they shown themselves entitled to the advantages of one of the exceptions to the rule that a party may not cross-examine his own witness.[13] They did not.

The fourth assignment of error is without merit.

---

[11]The defense motion was renewed at least twice (Tr. 212-213, 259-260).

[12]There is no showing that out of court counseling was unavailable or, if available, was limited in its usefulness by the experts' inability to actually hear the City's witnesses.

[13]E. g., hostility, surprise, *State* v. *Gaines* (1974), 40 Ohio App. 2d 224, 229-230 or bias or unwillingness to testify on the part of the public officials, 3 Wigmore on Evidence §774 (Chadbourn Rev., 1970).

The judgments below are reversed and the defendants in this appeal discharged.

*Judgments reversed.*

KRENZLER, C. J., and JACKSON, J., concur.

KRENZLER, C. J., concurring. I concur in the judgment of reversal based on the particular ordinance involved and the evidence presented. This does not mean that a municipality does not have the right under its police powers to regulate storage of vehicles other than automobiles in residential areas. However, the legislative enactment must be based on health, safety, morals or public welfare objectives. Further, the government agency has the burden of proving a violation of the ordinance by competent evidence.