THE STATE OF OHIO, APPELLEE, *v.* DIANA ET AL., APPELLANTS.

(No. 76-246—Decided December 15, 1976.)

*Mr. George C. Smith,* prosecuting attorney, and *Mr. David J. Graeff,* for appellee.

*Messrs. Tyack, Scott & Colley* and *Mr. Thomas M. Tyack,* for appellants.

CORRIGAN, J.

## I.

The sole item of controversy in this appeal is the contention of appellants that R. C. 2921.12, under which they were convicted on one count of the indictment, is unconstitutional.

Appellants claim the statute presents three constitutional infirmities, viz.:

(1) the statute is vague;

(2) the statute is overbroad; and

(3) the statute violates the Fifth Amendment privilege against self-incrimination.

R. C. 2921.12 provides:

"(A) No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:

"(1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation;

"(2) Make, present, or use any record, document, or thing, knowing it to be false and with purpose to mislead a public official who is or may be engaged in such proceeding or investigation, or with purpose to corrupt the outcome of any such proceeding or investigation.

"(B) Whoever violates this section is guilty of tampering with evidence, a felony of the third degree."

## II.

Before addressing appellants' broad-gauge attack on R. C. 2921.12, one must examine the noteworthy facts giving rise to this appeal.

When the police officers went to 1953 Oakland Park Avenue to execute the search warrant, they appeared si-

multaneously at the side door and the front door of the house. After knocking, the officer at the front door said, "police officer," following which the scuffling of feet inside was heard. At the same time, the officer at the side door shouted to the occupants that they were police officers with a search warrant. Thereupon, entrance was gained to the house by breaking down both doors.

At the time the officers entered, appellant Diana was seen in the bathroom talking on the telephone, at which time she slammed the bathroom door shut. The police broke open the bathroom door and found Diana stuffing water-soluble paper into the commode. These papers were described in the record as tally sheets called in to the banker by lieutenants who, in turn, received the bets and numbers from the number writers. There was further testimony that Diana was also chewing something in her mouth and had a half-sheet of paper in her hand.

At this time, too, appellant Susi was seen in the kitchen, where she was burning pieces of paper in a fire on the stove. The pieces of paper were identified as adding machine tape by the police witnesses who retrieved the unburned pieces of paper and also the charred paper, which was reconstructed as far as possible and photographed in the police laboratory.

Before the trial, appellants filed motions to suppress the evidence secured under the search warrant for the reason that the affidavit for the search warrant fails to show probable cause to believe that the items sought to be searched for were on the premises to be searched and that the search was improper and in violation of appellants' rights under the Fourth and Fourteenth Amendments to the United States Constitution.

These motions to suppress were overruled by the trial court.

The second and third gambling counts of the indictment upon which appellants were convicted each charge a previous conviction on a gambling offense, in addition to the current charge.

From the facts, it appears that the only parts of the challenged statute involved here are R. C. 2921.12(A) (1) and (B).

### III.

We consider first appellants' vagueness argument as to R. C. 2921.12(A) (1). Appellants complain that "official investigation" is not defined, "so one must speculate as to what all is included therein"; that "evidence" is also an undefined term. The landmark decision concerning "vagueness" in our constitutional jurisprudence is the case of *Connally* v. *General Construction Co.* (1926), 269 U. S. 385, 391, which articulates:

"* * * [A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process."

In the frame of facts in the record before us, it would seem that appellants herein are persons of uncommon intelligence in the area of gambling. The record establishes that they have been through prior legal proceedings in connection with the crime of gambling, and it follows that they surely know what the word "evidence," as used in R. C. 2921.12(A) (1), means. And, it would be an exercise in naivete on our part to accept the appellants' suggestion that their constitutional rights have been violated because the phrase "official investigation" is not defined in R. C. 2921.12(A)(1). If these females of the gambling sorority, apparently graduated to criminality as professional gamblers, do not apprehend that the serving of a search warrant heralds the beginning of an investigation of a crime involving them, because they are the only persons named in the search warrant as conducting the criminal gambling operation at the place searched, then the Introduction of Through the Looking-Glass of Lewis Carroll's Alice should be revisited by all persons connected with the administration of justice in order to be fortified by what Alice found there:

"Child of the pure, unclouded brow
    And dreaming eyes of wonder!
Though time be fleet and I and thou
    Are half a life asunder,
Thy loving smile will surely hail
    The love gift of a fairy tale."

*IV.*

Equally fanciful is the suggestion of appellants that R. C. 2921.12(A) (1) is unconstitutional because of overbreadth.

There is a comprehensive discussion of the "overbreadth doctrine" applicable to statutes in *Broadrick* v. *Oklahoma* (1973), 413 U. S. 601.

*Broadrick* involved interpretation of an Oklahoma statute patterned after the Federal Hatch Act, both of which regulated political activity of public employees. In upholding the statute as not being either overbroad or vague, the majority and dissenting opinions went into extensive discussion as to the applicability of the overbreadth doctrine.

The majority cited past opinions relating to overbreadth which were almost exclusively concerned with the First Amendment to the United States Constitution.

The overbreadth doctrine is closely connected with rights in the First Amendment because a statute may be deemed unconstitutional on its face when that statute fails to distinguish between conduct that may be proscribed and conduct that must be permitted. At page 615, in *Broadrick*, the following language appears:

"It remains a 'matter of no little difficulty' to determine when a law may properly be held void on its face and when 'such summary action' is inappropriate, *Coates* v. *City of Cincinnati*, 402 U. S. 611, 617 * * *. But the plain import of our cases is, at the very least, that facial overbreadth adjudication is an exception to our traditional rules of practice and that its function, a limited one at the outset, attenuates as the otherwise, unprotected behavior that it forbids the state to sanction moves from 'pure speech' toward conduct * * *."

*Broadrick* then makes the specific point that only in exceptional circumstances, predominantly dealing with First Amendment issues, will a court rely on overbreadth.

The theory behind this seems to relate to ''standing,'' and the concept of overbreadth not occurring in the facts of the case at bar.

In *Broadrick,* at page 610, it is stated:

''Embedded in the traditional rules governing constitutional adjudication is the principle that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the court. * * * [Citations omitted.] A closely related principle is that constitutional rights are personal and may not be asserted vicariously.''

Finally, the majority, in *Broadrick,* states, at page 613:

''Facial overbreadth has not been invoked when a limiting construction has been or could be placed on the challenged statute.''

Appellants, in their brief, cite *Gooding* v. *Wilson* (1971), 405 U. S. 518, and *State* v. *Schwing* (1975), 42 Ohio St. 2d 295, as recent examples of overbreadth which impinges upon Fifth Amendment areas. *Schwing* is a First Amendment case. Appellants then list examples of situations which they feel show the basis for claiming the statute is overbroad.

Whatever the merits of these examples of overbreadth that appellants have brought forth, it is appellee's position that, as stated in *Broadrick,* a statute is not overbroad where the state admittedly has power to regulate the conduct in question.

In *Broadrick,* at page 615, it is stated further:

''To put the matter another way, particularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.''

The ''plainly legitimate sweep'' of R. C. 2921.12 is

to prohibit the tampering with evidence. The fact that appellants can raise a number of examples of areas that fall outside the statute does not warrant this court declaring it unconstitutional because of overbreadth. Nor are R. C. 2921.12(A)(2) and (B) facially overbroad.

Appellants' second asserted basis for constitutional infirmity in R. C. 2921.12 is rejected.

## V.

Appellants' third and final argument is that the statute violates the Fifth Amendment privilege against self-incrimination, since the papers seized at the time of appellants' arrest were personal in nature and, therefore, protected by the Fifth Amendment.

In *Bellis* v. *United States* (1974), 417 U. S. 85, it is stated, at page 87:

"It has long been established, of course, that the Fifth Amendment privilege against compulsory self-incrimination protects an individual from compelled production of his personal papers and effects as well as compelled oral testimony. In *Boyd* v. *United States,* 116 U. S. 616 (1886), we held that 'any forceable and compulsory extortion of a man's own testimony or of his private papers to be used as evidence to convict him of crime' would violate the Fifth Amendment privilege. * * *"

In *Bellis,* the Supreme Court held that the Fifth Amendment privilege against self-incrimination was not available to a member of a dissolved law partnership who had been subpoenaed by a grand jury, to produce the partnership's financial books and records, since the partnership, though small, had an institutional identity and petitioner held the records in a representative, not a personal, capacity. The privilege is limited to its historic function of protecting only the natural individual from compulsory incrimination through his own testimony or personal records.

The *Bellis* case is one of the most recent in a long line of cases which have stressed the personal right of the privilege. The case also clearly distinguishes between the

subject matter of the past cases and the one at bar.

The subject matter of the *Bellis* case were personal documents which were not illegal to possess. Their prospective use in a court of law would presumably give information which would assist in the conviction of an accused.

In the present case, the act of possession is illegal, since the papers seized were used as gambling devices and thus cannot be afforded the protection under the Fifth Amendment. In reality, it is no different than any other type of real evidence introduced as material and relevant to the commission of the offense charged.

In the *Boyd* case, *supra* (116 U. S. 616), a federal statute authorized a court through proper motion to require the defendant to produce in court his private books or papers, or else the allegations were to be taken as confessed. In ruling the act unconstitutional, the court held that the seizure or compulsory production of a man's private papers to be used in evidence against him is equivalent to compelling him to be a witness against himself.

The clear distinction, however, is where the papers themselves are illegal. As the Court of Appeals noted, in its opinion:

"Would the defendants contend that in the enforcement of counterfeiting laws that there could be no confiscation of counterfeit money because such money is a private paper which cannot be used as evidence to convict the defendant of a crime? We think not. * * *"

Appellants' third claimed constitutional infirmity in R. C. 2921.12 just does not exist.

For the reasons stated, the judgment of the Court of Appeals as to each appellant is affirmed.

*Judgment affirmed.*

O'NEILL, C. J., HERBERT, STERN, CELEBREZZE, W. BROWN and P. BROWN, JJ., concur.