CLEVELAND INDUSTRIAL SQUARE, INC. et al., Appellees and Cross–Appellants,

v.

CLEVELAND BOARD OF ZONING APPEALS, Appellant and Cross–Appellee.

[Cite as *Cleveland Indus. Square, Inc. v. Cleveland Bd. of Zoning Appeals* (1992), 83 Ohio App.3d 301.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 61430.

Decided Oct. 22, 1992.

*Deborah Nicastro,* for appellees and cross-appellants.

*William M. Gruber* and *Christopher A. Holecek,* for appellant and cross-appellee.

*Cleveland Legal Aid Society* and *Joseph P. Meissner,* for *amicus curiae,* Lee–Seville–Miles Citizens Council.

---

JOHN F. CORRIGAN, Judge.

The Cleveland Board of Zoning Appeals ("BZA") appeals from the judgment of the trial court which determined that Cleveland Industrial Square, Inc. and its lessee, Cleveland Distillation Energy Corporation (collectively, the "applicants"), are entitled to a use permit for a destructive distillation plant, under the city's zoning ordinances. The applicants cross-appeal, challenging the trial court's refusal to find portions of the zoning ordinances unconstitutional, and unconstitutional as applied. For the reasons set forth below, we reverse the trial court's award of the use permit, and affirm the trial court's rejection of the applicants' constitutional claims.

I

Cleveland Industrial Square, Inc. is the owner of a parcel of real estate located at 16007 Seville Road, in Cleveland. The front two hundred feet of the parcel are zoned for "semi-industry" use, and the remainder is zoned for "general industry." Residential communities are to the south and northeast of the parcel.

On March 8, 1990, the applicants obtained permits from the city to construct the foundation and shell of an industrial building on the parcel. Thereafter, the applicants sought a use permit to construct a destructive distillation plant on the premises, which, according to the applicants, would "manufacture * * * energy through distillation of biomass * * *." The city's Commissioner of the Division of Building and Housing subsequently determined, however, that the distillation process involved the commercial "incineration" or "reduction" of garbage, or

would be as noxious as trades involved in "incineration" or "reduction," and was therefore not a permitted use under Section 345.04(c) of the city's zoning ordinances.

On April 6, 1990, the applicants instituted an appeal to the BZA and the matter was heard on May 29, 1990 and June 28, 1990.

At the May 29, 1990 proceedings, Paul Beno, Zoning Administrator for the Division of Building and Housing, testified upon questioning from the applicants that he relied upon dictionary definitions of "incineration" and "reduction," as well as documents which the applicants had submitted to the Division of Air Pollution Control, in determining that the plant was not a permitted use under Section 345.04(c) of the zoning ordinances. Moreover, even if the plant did not actually incinerate or reduce garbage due to technical modifications, its environmental impact is nonetheless comparable to garbage incineration or reduction plants.

Following Beno's testimony, one hundred four residents from the neighborhoods near the proposed facility were permitted to voice their objection to the facility.

The proceedings were subsequently continued to June 28, 1990, and for its key evidence at this time, the applicants presented the testimony of Mir Laik Ali, Commissioner of Building and Housing; John Curtin, an engineer with the Division of Air Pollution Control; William Fioritto, President of Waste Distillation Technology; Dr. Thomas Walsh, Engineering Professor at Case Western Reserve University; and Dana Rose, a document preparer.

Ali testified that the Division of Air Pollution Control had approved the applicants' use permit application, and that the permit was denied solely because Section 345.04 prohibits industrial uses which involve or are comparable to garbage incineration or reduction plants.

Similarly, Curtin testified that federal, state, and city laws would regulate the pollution generated by the facility, notwithstanding Section 345.04.

Fioritto and Walsh testified to the nature of the destructive distillation process and stated that it uses indirect heat to reduce organic solids from municipal garbage to gases and carbon char. The gases are then burned to create electricity, and the carbon char may be marketed for other uses. The two further stated that the process does not involve "incineration" of garbage because oxygen is removed from the garbage, only indirect heat is used, combustion does not occur, and carbon char rather than ash is created as a by-product. In addition, the witnesses claimed that the process does not involve "reduction" of garbage, if the weight of all of the by-products is considered. Moreover, the two claimed, the process is less noxious than incineration of garbage because the

process does not release furans and dioxins into the environment, and its by-products are less hazardous.

On cross-examination, however, these witnesses admitted that despite their assertion that "incineration" does not occur, the process does involve heating garbage to 1,200° F. In addition, notwithstanding their contention that "reduction" does not occur, the process does reduce both the volume and weight of the garbage introduced into the system. Finally, they admitted that depending upon the content of the garbage, dioxins and furans cannot always be excluded from plant emissions.

Dana Rose testified that incinerators were permitted at various hospitals and other businesses throughout the city. Rose was unable to establish, however, that any of these incinerators are operated to commercially eliminate garbage.

For its key evidence, the city presented the testimony of then–Attorney General Anthony Celebrezze, Paul Beno, and John Curtin.

Celebrezze testified that the facility is a garbage incinerator because it would use heat to convert the waste into energy. He further stated that if the facility were permitted, it would attract out-of-state refuse.

Beno testified that he was unclear as to the nature of the proposed plant because the applicants provided only sketchy details of its operation. Beno therefore requested additional information, consulted with other city officials, and reviewed other documents which the applicants had submitted to the Division of Air Pollution Control. He then ascertained that the destructive distillation process involved both the incineration and reduction of garbage and was therefore not a permitted use.

Beno additionally determined that even if the process were determined not to involve incineration or reduction, it was as noxious to the environment and surrounding landowners as trades involving such process, and was likewise not a permitted use. Similarly, Curtin testified that based upon his review of the data submitted by the applicants, he concluded that the proposed plant would generate the same type of pollutants as those generated by incineration, and may also generate fugitive odors and dust.

At the conclusion of the proceedings, the BZA denied the applicants' appeal, finding that the proposed plant involved "incineration" or "reduction" or a similarly noxious process, and was therefore not a permitted use under Section 345.04. Thereafter, the applicants commenced an appeal to the court of common pleas pursuant to R.C. Chapter 2506. Within this appeal, the applicants asserted that Section 345.04 is unconstitutionally vague for failure to define "reduction," and that Section 345.04 had been selectively enforced against them. Additional

evidence was therefore presented on these issues. See, generally, *SMC, Inc. v. Laudi* (1975), 44 Ohio App.2d 325, 73 O.O.2d 378, 338 N.E.2d 547.

For the applicants' key supplemental evidence, Clark Miller, Project Manager of Cleveland Distillation Energy Corporation, testified that the city permits hydraulic waste compactors and shredders in other enterprises. Miller acknowledged, however, that these machines merely remove air from the waste, whereas the destructive distillation facility reduces both its weight and volume. In addition, Miller failed to identify any commercially operated compactor or shredder.

The trial court subsequently determined that the city's denial of the use permit was arbitrary and unreasonable, and it reversed the BZA.

## II. The BZA's Appeal

In its two interrelated assignments of error, the BZA asserts that the trial court erred in reversing the denial of the use permit because the preponderance of the substantial, reliable, and probative evidence demonstrates that the applicants' proposed use exceeds the use limitations set forth in Section 345.04.

In *Kisil v. Sandusky* (1984), 12 Ohio St.3d 30, 34, 12 OBR 26, 29, 465 N.E.2d 848, 852, the Supreme Court set forth the standard of review to be applied to appeals brought pursuant to R.C. Chapter 2506:

" * * * The scope of review * * * requires the court to examine the 'substantial, reliable and probative evidence on the whole record.' * * *

"A court of common pleas should not substitute its judgment for that of an administrative board, such as the board of zoning appeals, unless the court finds that there is not a preponderance of reliable, probative and substantial evidence to support the board's decision. This court pointed out in *Dudukovich v. Housing Authority* (1979), 58 Ohio St.2d 202, 207 [12 O.O.3d 198, 202, 389 N.E.2d 1113, 1117], '[t]he key term is "preponderance."' The court went on further to explore the scope of review by the appellate courts and found, '[i]n determining whether the standard of review prescribed by R.C. 2506.04 was correctly applied by the Court of Common Pleas, both this court [the Supreme Court] and the Court of Appeals have a limited function.' *Id.* In an R.C. Chapter 2506 administrative appeal of a decision of the board of zoning appeals to the common pleas court, the court, pursuant to R.C. 2506.04, may reverse the board if it finds that the board's decision is not supported by a preponderance of reliable, probative and substantial evidence. An appeal to the court of appeals, pursuant to R.C. 2506.04, is more limited in scope and requires that court to affirm the common pleas court, unless the court of appeals finds, as a matter of law, that the decision of the common pleas court is not supported by a preponderance of reliable, probative and substantial evidence." (Footnote omitted.)

In this case, we find, as a matter of law, that the decision of the trial court is erroneous because the preponderance of reliable, probative and substantial evidence demonstrates that the proposed facility exceeds the use limitations imposed by Section 345.04(c).

In relevant part, Section 345.04 provides:

"(c) *Buildings and Uses Prohibited.*

"(2) In a General Industry District no building or premises shall hereafter be erected, altered, used, arranged or designed to be used, in whole or in part, for any of the following uses:

" * * *

"I. Incineration or reduction of dead animals, garbage, offal or refuse, except in a private incinerator constructed and operated as required by Section 337.23.

" * * *

"P. Any other trade, industry or use that will be injurious, hazardous, noxious or offensive to an extent equal to or greater than any one of the enterprises enumerated in this subsection (c)(2) hereof."

 "Incineration" and "reduction" are not defined. Accordingly, these terms are to be construed by considering their common and ordinary meanings. *Sammons v. Batavia* (1988), 53 Ohio App.3d 87, 89, 557 N.E.2d 1246, 1248.

 "Incineration" means to incinerate. Webster's New World Dictionary (1983) 306. "Incinerate" means "to burn to ashes; to burn up." *Id.* "Reduction" means to reduce. *Id.* at 501. "Reduce" means "to lessen," or "to change to a different form." *Id.*

Here, Paul Beno and former Attorney General Celebrezze testified that "incineration" occurred within the destructive distillation process. Beno testified that the process involves "incineration" of garbage because the gaseous by-products of the garbage are burned. Section 345.04, however, contemplates burning of the garbage itself, not its by-products. Former Attorney General Celebrezze testified that "incineration" occurs because heat is applied to reduce the waste. The ordinary meaning of incineration, however, contemplates burning, not merely the application of heat. Accordingly, the city failed to demonstrate that "incineration" occurred in the process.

Conversely, Fioritto and Walsh testified that the process does not involve "incineration" because the absence of oxygen from the garbage precludes "burning," only indirect heat is applied, and carbon char rather than ash is created. This testimony constituted a preponderance of reliable, probative, and substantial evidence that the process does not involve "incineration."

■ The city did establish, however, through Beno, that the process does reduce both the volume and weight of the garbage which fuels the destructive distillation, and both Fioritto and Walsh admitted on cross-examination that reduction does occur. Accordingly, there is a preponderance of reliable, probative, and substantial evidence that "reduction" does occur within the process, and it is therefore not a permitted use under Section 345.04(c)(2)(I).

■ Finally, the city established, through Beno, that the destructive distillation process is as noxious as trades involving the reduction or incineration of trash because it generates comparable waste, fumes, noise, and pollution. Similarly, Curtin testified that the process generated the same type of pollutants as are generated by incineration. In addition, Fioritto and Walsh ultimately admitted that dioxin and furans cannot always be excluded from plant emissions. Accordingly, the BZA relied upon a preponderance of reliable, probative, and substantial evidence in concluding that the destructive distillation process is as noxious as processes involving incineration or reduction, and the trial court impermissibly substituted its judgment for that of the BZA in concluding otherwise.

The BZA's first and second assignments of error are sustained, and the judgment of the court of common pleas is reversed.

### III. The Applicants' Cross–Appeal

#### A

For their first assignment of error, the applicants claim that Section 345.04(c) is unconstitutionally vague and overbroad because "reduction" is not defined.

■ With regard to the vagueness challenge, we note that the ordinance is entitled to a strong presumption of validity, unless the party attacking the ordinance can overcome this presumption. *Franchise Developers, Inc. v. Cincinnati* (1987), 30 Ohio St.3d 28, 32, 30 OBR 33, 36, 505 N.E.2d 966, 970. Moreover, "the unconstitutionally vague argument is usually applicable only to criminal ordinances which fail to put persons on notice as to what conduct is prohibited. Such an argument is inherently deficient in a zoning case where the zoning resolution, by its very nature, puts a property owner on notice that use of the property is subject to regulation. *Id.* [*Rumpke Waste, Inc. v. Henderson* (S.D.Ohio 1984), 591 F.Supp. 521] at 529–530. In the cause *sub judice,* it appears that the property owner was on notice of the overlay zoning restrictions placed on his property. See *Consolidated Mgmt., Inc. v. Cleveland* (1983), 6 Ohio St.3d 238, 6 OBR 307, 452 N.E.2d 1287." *Franchise Developers, supra,* 30 Ohio St.3d at 32, 30 OBR at 37, 505 N.E.2d at 970.

■ Finally, even assuming that the vagueness argument is properly raised in this context, it is well settled that where the challenged conduct is clearly

proscribed by the legislation at issue, the vagueness claim is without merit. See *State v. Ferguson* (1991), 57 Ohio St.3d 176, 566 N.E.2d 1230, 1231.

█ With respect to the overbreadth challenge, we note that this basis of attack is predominantly applicable to First Amendment issues. *State v. Diana* (1976), 48 Ohio St.2d 199, 205, 2 O.O.3d 387, 390, 357 N.E.2d 1090, 1093. Impermissible overbreadth is found where the legislation at issue prohibits constitutionally protected conduct. *State v. Hayes* (1987), 31 Ohio App.3d 40, 41, 31 OBR 56, 57, 507 N.E.2d 1176.

█ Applying the foregoing, we reject both the vagueness and overbreadth arguments presented here. As to the vagueness challenge, the applicants were clearly on notice that the property is subject to use restrictions by application of the zoning ordinances, notwithstanding the absence of a definition of "reduction." In addition, the applicants' witnesses, while advancing their contention that reduction does not occur, manifested a clear understanding of this term. More-over, because the undisputed evidence indicates that the process does reduce both the weight and volume of the garbage placed into the system, the process is clearly and unambiguously proscribed by Section 345.04(c).

█ As to the overbreadth challenge, the applicants have failed to demonstrate that their operation of the destructive distillation system is a constitutionally protected activity. Accordingly, this claim lacks merit.

The applicants' first assignment of error is overruled.

B

In their second assignment of error, the applicants assert that the ordinance has been selectively applied in violation of the Constitution, because it has been enforced against them, but has not been enforced to preclude operation of other incinerators and reducers.

█ The Equal Protection Clause requires that legislation regulate impartial-ly. *Euclid v. Fitzthum* (1976), 48 Ohio App.2d 297, 300, 2 O.O.3d 278, 279, 357 N.E.2d 402, 405.

█ In this case, the city endeavored to enforce R.C. 345.04(c) to bar the applicants from operating a commercial garbage incineration or reduction facility. Although the applicants submitted evidence that other incinerators and reducers are permitted within various hospitals and other enterprises, they failed to demonstrate that these devices are operated for the purpose of commercial garbage processing. Accordingly, there is no evidence of unconstitutional, selec-tive enforcement.

The applicants' second assignment of error lacks merit and the trial court's rejection of the applicants' constitutional challenges is hereby affirmed.

*Judgment accordingly.*

MATIA, C.J., and SPELLACY, J., concur.