**Dominico Ramon BURDELL,
Appellant,**

v.

**COMMONWEALTH of Kentucky,
Appellee.**

**No. 98–SC–244–MR.**

Supreme Court of Kentucky.

April 22, 1999.

**630**

Marcel Elaine Radomile, Lexington, KY, for appellant.

A.B. Chandler, III, Attorney General, Frankfort, KY, Gregory C. Fuchs, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, KY, for appellee.

COOPER, Justice.

Appellant, Dominico Ramon Burdell, was convicted in the Fayette Circuit Court of trafficking in a controlled substance in the first degree, KRS 218A.1412, tampering with physical evidence, KRS 524.100, possession of drug paraphernalia, KRS 218A.500, and persistent felony offender in the first degree, KRS 532.080(3). He was sentenced to ten years imprisonment on the trafficking conviction, to five years on the tampering conviction, and to twelve months and a $500.00 fine on the drug paraphernalia conviction. Each felony conviction was enhanced to twenty years as a result of the PFO conviction and the sentences were ordered to run concurrently for a total of twenty years to serve. He appeals to this Court as a matter of right, Ky. Const. § 110(2)(b), claiming (1) the evidence was insufficient to support his convictions of trafficking in a controlled substance and tampering with physical evidence, (2) he should have been granted a separate trial from that of his co-defendant, Antonio Waite, and (3) it was error to permit the introduction of evidence regarding crack cocaine when he was not charged with possessing or trafficking in crack cocaine.

At 12:59 a.m. on March 4, 1997, Officer Deanna Shimuzu of the Drug Interdiction Unit of the Lexington–Fayette Urban County Division of Police observed an illegally parked U–Haul truck blocking traffic on Hawkins Avenue, a one-way street in the City of Lexington. Unable to observe anyone in the truck, Shimuzu approached a nearby residence at 455 Hawkins Avenue where the interior front door was open and lights were on inside. By looking through a security storm door, she observed two males inside, who were later identified as Appellant and Waite. She saw Waite hand a clear plastic baggie containing a white powdery substance to Appellant and saw Appellant hand money to Waite. Shimuzu then called for backup units.

The next officer to arrive on the scene was Officer Jay Alleman. Shimuzu testified that when she and Alleman returned to the residence together, she saw Appellant holding a plastic baggie containing a white powdery substance and Waite removing another baggie containing a similar substance from a kitchen cabinet. Alleman testified that he saw Appellant put a baggie containing a white powdery substance on the kitchen counter and pass Waite a "wad" of cash which Waite put in his pocket. When Appellant and Waite became aware of the officers' presence, they partially shut the door. However, both officers testified that they could see Waite sweeping a white powdery substance from the floor with a broom. Alleman testified that Appellant stood at the doorway and refused to open the storm door. Waite then returned to the door and claimed that it was stuck and could not be opened, but agreed to let the officers enter through the back door. The front door was then completely shut and the officers testified they could hear activity inside the house which sounded like objects being moved and people running back and forth. The officers ultimately were admitted into the house through the back door. Upon entering the kitchen, Shimuzu observed some white powdery substance laying loose on the kitchen counter; however, the baggie of white powdery substance previously observed by Alleman was no longer there. Shimuzu searched Waite and discovered $1,286.00 in cash on his person. Alleman searched Appellant and found $1,821.60 in cash in his left front pants pocket and a baggie containing a white powdery substance in his jacket pocket. That substance was later determined to be procaine, a non-narcotic, non-

controlled substance used either as a cutting (diluting) agent for crack cocaine or as a topical numbing agent for sexual enhancement.

In preparation for transport to the police station, Waite asked the officers to retrieve his shoes from the living room. When the officers did so, they discovered a baggie later determined to contain 36.8 grams of powder cocaine on the floor near Waite's shoes and between a leather couch and chair. Waite then exclaimed, "Oh no, that's not mine. He set me up, man. That's not mine." A subsequent search of the residence pursuant to a search warrant revealed:

(1) a package of rolling papers found on the floor between the black leather couch and chair;

(2) 8 marijuana "roaches" in an ashtray in the living room;

(3) 4 grams of marijuana on the bed in the first bedroom;

(4) 52 grams of powder cocaine in a clear plastic baggie on top of a small refrigerator in the left bedroom, along with a set of black digital scales;

(5) 29 grams of powder cocaine in a clear baggie on the bed in the left bedroom;

(6) 1.9 grams of cocaine laying loose on the kitchen counter;

(7) 2 sets of digital scales, one on the bar in the living room and the other on a small refrigerator in the left bedroom;

(8) hollow figurines in the left bedroom containing an undetermined amount of money; and

(9) a phone bill in the name of Antonio Waite on the kitchen table listing his address as 455 Hawkins Avenue.

A search of the U–Haul truck revealed a contract showing that the truck had been rented to Appellant. In a recorded statement, Appellant stated that he had found the baggie of procaine in his jacket four days earlier, but did not know what the substance was. At trial, Appellant claimed that he went to Waite's house to purchase procaine for use as a sexual enhancement and that none of the controlled substances found at Waite's residence belonged to him. Waite likewise testified that none of the cocaine found in his residence belonged to him. According to Waite, Appellant had come to his house to use the bathroom, and that when the officers came to the door, Appellant "came out of his pocket" and cocaine was flying everywhere.

## I. SUFFICIENCY OF THE EVIDENCE.

*A. Trafficking in a controlled substance.*

■ The indictment charged Appellant with possessing a quantity of powder cocaine with the intent to sell or distribute it to another. KRS 218A.010(24). Appellant argues that all of the cocaine was found in Waite's residence and none of it was found in his possession. However, on two different occasions, he was seen receiving from Waite and taking possession of baggies containing white powdery substances. Except for cocaine, the only baggie of white powdery substance found at the scene was the baggie of procaine, which Appellant at first claimed had been in his pocket for four days. From this evidence a jury could reasonably conclude that Appellant received from Waite and possessed at least two baggies of cocaine. The jury could also conclude from Waite's excited utterance when the baggie of cocaine was discovered near his shoes, as well as from Waite's testimony at trial, that all of the cocaine found in Waite's residence that night had been brought there by Appellant.

There was evidence that the cocaine found in Waite's residence was of a high degree of purity and had a street value of $10,000.00. There was also evidence that some of the cocaine was in "chunk" form so that it was not yet ready for sale. Finally, there was evidence that although there are numerous cutting agents for

crack cocaine, procaine is the cutting agent of choice in 80% of cases. From this evidence, the jury could reasonably infer that Appellant possessed the cocaine not for his own use, but for the purpose of sale or distribution to others. *Commonwealth v. Benham*, Ky., 816 S.W.2d 186 (1991).

B. Tampering with physical evidence.

■ KRS 524.100(1)(a) provides as follows:

A person is guilty of tampering with physical evidence when, *believing that an official proceeding is vending or may be instituted,* he:

(a) Destroys, mutilates, *conceals, removes* or alters physical evidence which he believes is about to be produced or used in the official proceeding with intent to impair its verity or availability in the official proceeding. (Emphasis added.)

In support of Appellant's conviction of tampering with physical evidence, the Commonwealth relies on the disappearance of the baggie of white powdery substance which Officer Alleman had seen Appellant place on the kitchen counter. This item of potential evidence disappeared from the kitchen counter after Appellant became aware of the presence of the officers and closed the front door, and before the officers were granted entry through the back door. The sequence of events described by the officers sufficed to sup-port a conclusion that Appellant participated in the concealment or removal of this evidence. *Commonwealth v. Benham, supra.* The remaining issue relates to the fact that no official proceeding was pending or had been instituted when the concealment or removal occurred.

A plurality of states which criminalize the act of tampering with physical evidence have enacted statutes identical to or substantially the same as KRS 524.100, *i.e.,* the tampering must be accompanied by a belief that the evidence would be produced or used in an official proceeding which "is pending or may be instituted." [1] Other states have statutes requiring only that the act of tampering occur under a belief that an official proceeding *or investigation* is pending or about to be instituted .[2] Under the latter form of tampering statute, the concealment or removal of the baggie of white powdery substance from the kitchen cabinet in this case would clearly support a conviction, because the tampering occurred at a time when Appellant would have known that the police officers were investigating his illegal activity. *E.g., Hayes v. State,* 634 So.2d 1153 (Fla.Dist.Ct.App.1994); *State v. Storey,* 901 S.W.2d 886 (Mo.1995); *State v. McKimmie,* 232 Mont. 227, 756 P.2d 1135 (1988), *overruled on other grounds, State v. Rothacher,* 272 Mont. 303, 901 P.2d 82 (1995); *State v. Diana,* 48 Ohio St.2d 199,

1. Alabama, Ala.Code § 13A–10–129 (1975) ("is pending or may be instituted"); Arizona, Ariz.Rev.Stat.Ann. § 13–2809 ("is pending or ... is about to be instituted"); Colorado, Colo.Rev.Stat. § 18–8–610 ("is pending or about to be instituted"); Connecticut, Conn. Gen.Stat.Ann. § 53a–155 ("is pending or about to be instituted"); Delaware, Del.Code Ann. tit. 11, § 1269(2) ("official proceeding or prospective official proceeding"); District of Columbia, D.C.Code Ann. § 22–723 ("has begun or is likely to be instituted"); Hawaii, Haw.Rev.Stat. § 710–1076 ("is pending or about to be instituted"); Nebraska, Neb.Rev. Stat. § 28–922 ("is pending or about to be instituted"); New York, N.Y. Penal Law § 215.40 (McKinney 1998) ("official proceeding or prospective official proceeding"); North Dakota, N.D.Cent.Code § 12 .1–09–03

("is pending or about to be instituted"); Oregon, Or.Rev.Stat. § 162.295 ("is then pending or ... about to be instituted"); Washington, Wash.Rev.Code Ann. § 9A.72.150 (West 1988) ("is pending or about to be instituted").

2. Alaska, Alaska Stat. § 11.56.610; Arkansas, Ark.Code Ann. § 5–53–111; Florida, Fla.Stat. Ann. § 918.13 (West 1996); Louisiana, La .Rev.Stat.Ann. § 14:130.1; Missouri, Mo. Ann.Stat. § 575.100 (Vernon 1979); Montana, Mont.Code Ann. § 45–7–207; New Hampshire, N.H.Rev.Stat.Ann. § 641:6; New Jersey, N.J.Stat.Ann. § 2C:28–6 (West 1995); Ohio, Ohio Rev.Code Ann. § 2921.12 (Baldwin 1972); Pennsylvania, 18 Pa.Cons.Stat. Ann. § 4910; Texas, Tex. Penal Code Ann. § 37.09 (West 1994); Utah, Utah Code Ann. § 76–8–510 (1953).

357 N.E.2d 1090 (1976), *cert. denied,* 431 U.S. 917, 97 S.Ct. 2180, 53 L.Ed.2d 227 (1977); *Commonwealth v. Govens,* 429 Pa.Super. 464, 632 A.2d 1316 (1993); *State v. Smith,* 927 P.2d 649 (Utah Ct.App.1996). However, even those states with tampering statutes identical or substantially similar to KRS 524.100, and which have considered the issue, have held that one who conceals or removes evidence of criminal activity contemporaneously with the commission of his crime commits the offense of tampering with physical evidence. *E.g., Frayer v. People,* 684 P.2d 927 (Colo.1984); *State v. Foreshaw,* 214 Conn. 540, 572 A.2d 1006 (1990); *People v. Palmer,* 176 Misc.2d 813, 674 N.Y.S.2d 566 (N.Y.Crim.Ct.1998) and cases cited therein. The compelling logic of these decisions is that one who has committed a criminal act and then conceals or removes the evidence of his crime does so in contemplation that the evidence would be used in an official proceeding which might be instituted against him.

The official commentary to KRS 524.100 clarifies that a conviction of this offense may be obtained even if the tampering occurred prior to the initiation of an official proceeding. "[I]t is sufficient if the defendant believes an official proceeding may be instituted and if he engages in the proscribed conduct with the specified intent to impair the truth or availability of evidence he believes will be used...." *Id.* Cf. *Penn v. Commonwealth,* Ky., 687 S.W.2d 135 (1985), in which we held that the offense of bribing a witness, KRS 524.020, could be committed even though no official proceeding was underway at the time the bribe was offered, so long as the jury believed "that the accused had an intent to influence the testimony of a potential witness." *Id.* at 137. We conclude that KRS 524.100 should be similarly interpreted. The evidence of removal and/or concealment in this case was sufficient to support Appellant's conviction of tampering with physical evidence.

## II. DENIAL OF SEPARATE TRIALS.

 Appellant's argument with respect to his claim that he should have been granted a separate trial essentially is that he was prejudiced by his joint trial with Waite because Waite's attempt to place all of the blame on him forced him to give up his right to remain silent and testify in his own defense, *i.e.,* try to exonerate himself by placing all the blame on Waite. Undoubtedly, Appellant and Waite had antagonistic defenses and Appellant might have fared better if Waite had not attempted to exculpate himself by inculpating Appellant. However, RCr 6.20 permits joinder if the defendants are charged with having participated in the same act or transaction or in the same series of acts or transactions constituting the offense or offenses. *Dishman v. Commonwealth,* Ky., 906 S.W.2d 335, 340 (1995).

> [N]either antagonistic defenses nor the fact that the evidence for or against one defendant incriminates the other amounts, by itself, to unfair prejudice.... That different defendants alleged to have been involved in the same transaction have conflicting versions of what took place, or the extent to which they participated in it, vel non, is a reason for rather than against a joint trial. If one is lying, it is easier for the truth to be determined if all are required to be tried together.

*Ware v. Commonwealth,* Ky., 537 S.W.2d 174, 177 (1976).

 This was not a case in which evidence was admitted which was competent as to one defendant but incompetent as to the other, *e.g., Cosby v. Commonwealth,* Ky., 776 S.W.2d 367 (1989), *cert. denied,* 493 U.S. 1063, 110 S.Ct. 880, 107 L.Ed.2d 963 (1990); or one where Appellant's codefendant was charged as an habitual offender, but Appellant was not, *e.g., Hardin v. Commonwealth,* Ky., 437 S.W.2d 931 (1968). There is a legitimate preference for joint trials. *Wilson v. Commonwealth,* Ky., 836 S.W.2d 872 (1992), *cert. denied,* 507 U.S. 1034, 113 S.Ct. 1857,

123 L.Ed.2d 479 (1993). The trial judge has broad discretion in determining whether to sever joint indictments and his/her decision in that regard will not be overturned absent a showing of prejudice to the defendant and a clear abuse of discretion by the judge. *Humphrey v. Commonwealth*, Ky., 836 S.W.2d 865 (1992); *Turpin v. Commonwealth*, Ky., 780 S.W.2d 619 (1989), *cert. denied*, 494 U.S. 1058, 110 S.Ct. 1530, 108 L.Ed.2d 769 (1990). Neither occurred in this case.

### III. EVIDENCE PERTAINING TO CRACK COCAINE.

 Kentucky State Police Forensics Analyst Laura Sudkamp testified to her analyses of the substances confiscated by the police officers in their investigation of this case. In addition, she explained to the jury the difference between powder and crack cocaine and that procaine is used as a cutting agent for crack cocaine. Appellant objected to this testimony as being irrelevant, since he was not charged with possession of crack cocaine. However, Appellant was in possession of procaine; and the evidence that procaine is used as a cutting agent for crack cocaine was relevant to prove that he possessed the powder cocaine for the purpose of sale or distribution.

Mostly, Appellant's complaints on appeal deal with the testimony of Lieutenant Mike Bosse, commander of Lexington's Police Narcotics Unit, who rendered expert testimony on the relative commercial value of powder and crack cocaine, how crack cocaine is manufactured, and the methods for preparation and inhalation of both powder and crack cocaine. Appellant did not object to any of this testimony at trial, thus, the issue is unpreserved for appeal. RCr 9.22; *Commonwealth v. Preece*, Ky., 844 S.W.2d 385 (1992), *cert. denied*, 510 U.S. 816, 114 S.Ct. 66, 126 L.Ed.2d 36 (1993). Nor did the admission of this evidence constitute palpable error. RCr 10.26. The evidence was relevant to help the jury understand the nature and uses of cocaine and tended to prove that Appellant possessed the cocaine for the purpose of sale. *United States v. Flowal*, 163 F.3d 956 (6th Cir.1998); *Sargent v. Commonwealth*, Ky., 813 S.W.2d 801 (1991); *Kroth v. Commonwealth*, Ky., 737 S.W.2d 680 (1987).

Accordingly, the judgments of conviction and the sentences imposed by the Fayette Circuit Court are affirmed.

GRAVES, JOHNSTONE, STEPHENS, and WINTERSHEIMER, JJ., concur.

LAMBERT, C.J., and STUMBO, J., concur in result only without separate opinion.