Leroy **TIMBERLAKE**, Jr., Appellant,

v.

**UNITED STATES of America,**
**Appellee.**

**No. 97–CF–1849.**

District of Columbia Court of Appeals.

Argued Oct. 5, 1999.
Decided Sept. 7, 2000.

Richard K. Gilbert, Washington, DC, appointed by this court, for appellant.

Alex J. Bourelly, Assistant United States Attorney, with whom Wilma A. Lewis, United States Attorney, and John R. Fisher, Elizabeth Trosman, and Ricardo J. Nunez, Assistant United States Attorneys, were on the brief, for appellee.

Before WAGNER, Chief Judge, and RUIZ, Associate Judge, and BELSON, Senior Judge.

RUIZ, Associate Judge:

This case presents our first opportunity to substantively construe D.C.Code § 22–723(a) (1996), which makes it a crime to tamper with physical evidence. Section 22–723(a) reads in full:

A person commits the offense of tampering with physical evidence if, knowing or having reason to believe an official proceeding has begun or knowing that an official proceeding is likely to be institut-

ed, that person alters, destroys, mutilates, conceals, or removes a record, document, or other object, with intent to impair its integrity or its availability for use in the official proceeding.

Timberlake argues that the evidence of his concealment of drugs in his mouth in hope of avoiding detection is insufficient as a matter of law to support his conviction under § 22–723 and that the trial court erred in not instructing the jury to that effect.[1] We affirm on the ground that there was additional and sufficient evidence from which the jury could find that Timberlake knew he was the subject of a police investigation while he held the drugs in his mouth. We conclude that the instruction given adequately informed the jury of the elements of the offense and that the failure to give Timberlake's requested instruction, even if error, was harmless.

## I.

On February 16, 1995, Sergeant Gerald Neill, an eighteen-year veteran of the Metropolitan Police Department, and Officer Wayne Stancil, a fourteen-year veteran, were in plain clothes and assigned to the First District Vice Unit. Their objective that evening was to identify and arrest drug sellers by making undercover purchases. At approximately eight o'clock in the evening, the officers approached the corner of 16th and D Streets, S.E., in Washington, D.C., an area known for drug trafficking. Shortly after the undercover officers reached the corner, a marked police car drove through the intersection, and an unknown female yelled "five-o," indicating that police were in the area. Officer

Neill then saw Timberlake put several plastic bags in his mouth. Suspecting the bags contained narcotics, Officer Neill approached Timberlake and twice asked what he had in his mouth. Timberlake mumbled each response, whereupon Officer Neill identified himself as a police officer and a struggle ensued in which Officer Neill forced Timberlake's head downward to prevent him from swallowing the bags. The struggle, which lasted at least twenty seconds, was joined by Metropolitan Police Officer Michael Jewell who was also in the area as part of the operation. Timberlake eventually spit out two plastic bags containing heroin and cocaine which Officer Jewel recovered.[2]

## II.

### Standard of Review

When reviewing the denial of a motion for judgment of acquittal, the court "employs the same standard as that applied by the trial court in determining whether the evidence was sufficient to convict." *Curry v. United States,* 520 A.2d 255, 263 (D.C.1987). The court "must review the evidence in the light most favorable to the government, giving full play to the right of the jury to determine the credibility, weigh the evidence, and draw justifiable inferences of fact, and drawing no distinction between direct and circumstantial evidence." *Id.* It is not necessary that the government's evidence compel a finding of guilt beyond a reasonable doubt, nor that the government negate every possible inference of innocence. *Bullock v. United States,* 709 A.2d 87, 93 (D.C.1998). "[T]he relevant question is whether, after viewing the evidence in the light most

1. Appellant, Leroy Timberlake, Jr., was charged by indictment with one count each of possession with intent to distribute heroin and cocaine in violation of D.C.Code § 33–541(a)(1), and attempted tampering with physical evidence in violation of D.C.Code §§ 22–103 and 22–723. A jury found him guilty of all counts. Timberlake was sentenced to two to five years' imprisonment on the drug counts, and one to three years' imprisonment on the tampering charge, with all counts running concurrently. Timberlake does not appeal his conviction on the charge of possession with intent to distribute.

2. The first plastic bag contained ten smaller ziplock bags of cocaine (1.28 grams). The other plastic bag contained five ziplock bags of heroin (.53 grams).

favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). "Reversal of the trial court's denial of appellant's motion for judgment of acquittal is warranted 'only where there is no evidence upon which a reasonable [juror] could infer guilt beyond a reasonable doubt.'" *Curington v. United States*, 621 A.2d 819, 824 (D.C.1993) (quoting *Head v. United States*, 451 A.2d 615, 622 (D.C. 1982)) (alteration in original).

## Analysis

### I. *Tampering With Physical Evidence*

Parsing the language of D.C.Code § 22–723(a), we note that there are three elements of the offense: 1) altering, destroying, mutilating, concealing or removing a record, document, or other object; 2) while a) knowing or having reason to believe that an official proceeding has begun, or b) knowing that an official proceeding is likely to be instituted; 3) with the intent to impair its integrity or availability for use in the official proceeding. The statute defines an "official proceeding" as "any trial, hearing, investigation or other proceeding in a court of the District of Columbia or conducted by ... an agency or department of the District of Columbia government...." D.C.Code § 22–721(4).

In this appeal, only the knowledge element of the offense is at issue. Timberlake argues that the government adduced insufficient evidence to prove the charge that he attempted to tamper with physical evidence because his concealment of the drugs preceded his knowledge that an "official proceeding" was likely to be instituted against him, as required by § 22–723(a). The government, on the other hand, argues that after Timberlake heard "five-o," he knew, or had reason to believe, that an official proceeding (*i.e.,* a police investigation) had begun, or was likely to be instituted. Alternatively, the government argues that Timberlake was aware that an official proceeding had begun, or was likely to be instituted, as he struggled with the officers in a continued attempt to conceal the packets of drugs he had placed in his mouth.

As this is a case of first impression in this jurisdiction, both Timberlake and the government direct the court to *State v. Jennings*, 666 So.2d 131 (Fla.1995), a case with similar facts, in which the Supreme Court of Florida interpreted its law criminalizing tampering with physical evidence.[3] In *Jennings*, law enforcement officers observed Jennings holding what they believed to be a marijuana cigarette. As one of the officers approached Jennings, he observed what he believed to be loose cocaine rocks in one of Jennings' hands. The officer shouted "police," at which time Jennings tossed the rocks into his mouth and swallowed them. Jennings began to choke and the officer took hold of Jennings who broke away and took several steps before he was arrested. The objects Jennings swallowed were never recovered.

The trial court dismissed the tampering count, relying on prior precedent that tossing evidence away in the presence of a law enforcement officer does not constitute tampering under Florida's statute. The Florida Supreme Court reversed the trial court decision, holding that "[a]n affirmative act of throwing evidence away constitutes more than mere abandonment," and that "swallowing an object clearly constitutes altering, destroying, concealing, or removing a 'thing' within the meaning of

---

3. Florida's statute reads in pertinent part:
   (1) No person, knowing that a criminal trial or proceeding or an investigation by a duly constituted prosecuting authority, law enforcement agency, grand jury or legislative committee of this state is pending or is about to be instituted, shall:

   (a) Alter, destroy, conceal, or remove any record, document, or thing with the purpose to impair its verity or availability in such proceedings or investigation....
   
   FLA. STAT. CH. 918.13 (1999).

[the statute]." *Jennings,* 666 So.2d at 133. The court rejected the conclusion of the intermediate appellate court that a police officer "shouting 'police' was insufficient, as a matter of law, to put Jennings on notice that he was about to be investigated for the possession of illegal drugs." *Id.* Having determined that the evidence was sufficient for a jury to find the knowledge requirement was satisfied, the court remanded because "[r]easonable persons could differ as to whether Jennings possessed the requisite knowledge under [the statute]" that an investigation was about to be commenced. *Id.* at 134. *See also State v. Forchin,* 684 So.2d 820 (Fla.1996) (affirming tampering conviction of defendant who swallowed a plastic bag containing white substance after two officers identified themselves as police).

In *Commonwealth v. Morales,* 447 Pa.Super. 491, 669 A.2d 1003 (1996), a Pennsylvania court was presented with a similar situation.[4] In *Morales,* two officers participating in an undercover drug surveillance investigation observed a known heroin dealer participate in a series of drug transactions. As the dealer got into a car with Morales and another buyer to leave the scene, the investigators followed. At the first red light, the officers pulled in front of the suspect's car, jumped out displaying their badges and yelled, "police, put your hands in the air." *Id.* at 1005. In response, Morales raised his hand to his mouth and placed a light blue packet inside. One officer dove at Morales' throat in an effort to stop him from swallowing, ordering him to "spit out." Morales swallowed the drugs. The court held that Morales' "reaction, by raising his hands to his mouth and placing the light blue glas-

sine packet inside, readily confirms his awareness that the police were involved in some sort of investigation." *Id.* at 1006.

■ In both *Jennings* and *Morales* the police identified themselves, and were in close proximity to the defendant before he attempted to swallow the drugs, thus clearly making the defendant aware that *he* was the subject of police investigation. In the present case, Timberlake placed the drugs into his mouth on hearing the shouted warning that a police cruiser was in the vicinity and before becoming aware of the undercover officers' presence. The government does not argue that Timberlake knew of the undercover police officer's presence before he placed the drugs in his mouth. Rather, the government argues that reasonable jurors could have found that Timberlake, on hearing the shouted warning and having himself been the focus of a prior drug investigation, suspected he was the focus of a police investigation and immediately concealed the drugs upon learning police were present in the area.[5] The government asserts that Timberlake's placing the drugs into his mouth on hearing a generalized warning of police presence, by a third-party non-police source in an area with a number of people, is sufficient to satisfy the statute's requirement that the defendant "know[s] or ha[s] reason to believe" that an "official proceeding" was likely to be instituted. *See* D.C.Code § 22–723(a).

■ The government's assertion raises issues that we need not reach, however, as we conclude that ours is a case in which the tampering occurred at a time when Timberlake knew the police officers were

---

**4.** Pennsylvania's statute reads in pertinent part:

A person commits a misdemeanor of the second degree if, believing that an official proceeding or investigation is pending or about to be instituted, he:

(1) alters, destroys, conceals or removes any record, document or thing with intent to impair its verity or availability in such proceeding or investigation. . . .

18  PA. CONS.STAT. § 4901(1) (1999).

**5.** At trial, Timberlake's testimony was impeached with a prior conviction for attempted possession with intent to distribute cocaine. This evidence was neither before the jury as substantive evidence of the crime, nor did the government at trial make a specific connection between Timberlake's prior conviction and the knowledge element of § 22–723(a).

investigating his illegal activity and thereby knew an official proceeding was imminent. Our holding in this case is consistent with jurisdictions applying their laws to similar situations. *See, e.g., Frayer v. People*, 684 P.2d 927, 929 (Colo.1984) (en banc) (attempt to destroy evidence while in police custody); *Hayes v. State*, 634 So.2d 1153, 1154 (Fla.Dist.Ct.App.1994) (per curiam) (defendant dropped drugs into drainage outlet while being pursued by police); *Jennings*, 666 So.2d at 132 (attempt to destroy evidence after officer shouted "police"); *Burdell v. Commonwealth*, 990 S.W.2d 628, 632 (Ky.1999) ("evidence disappeared from the kitchen counter after appellant became aware of the presence of the officers and closed the front door"); *People v. Palmer*, 176 Misc.2d 813, 674 N.Y.S.2d 566, 569 (N.Y.Crim.Ct.1998) (defendant "disposed of the bag of alleged marijuana ... prompted by the approach of a uniformed police officer" who had ordered him to stop); *State v. Diana*, 48 Ohio St.2d 199, 357 N.E.2d 1090, 1092

(1976) (attempt to destroy drugs after officers entered house); *Morales*, 669 A.2d at 1005 (defendant attempted to destroy evidence after officers displayed badges and shouted "police, put your hands in the air"); *Commonwealth v. Govens*, 429 Pa.Super. 464, 632 A.2d 1316, 1318 (1993) (defendant attempted to destroy drugs when police knocked on door and identified themselves as police). On the facts of this case, a reasonable jury could find that once Officer Neill had identified himself and the struggle ensued, Timberlake knew an official proceeding was likely to be instituted against him and thus possessed the requisite state of mind as he attempted to destroy (*i.e.*, swallow) the evidence. *See Frayer*, 684 P.2d at 929 ("A person arrested with such contraband in her possession ... has every reason to believe that formal charges will be filed against her."). Thus, the trial court did not err in denying Timberlake's motion for judgment of acquittal.[6]

**6.** Because we affirm on an alternative theory, we need not reach the difficult questions of what constitutes an "official proceeding" and what is sufficient subjective knowledge that an official proceeding is "likely to be instituted" absent circumstances that objectively manifest the proceeding, such as confrontation with police while in possession of contraband. We have never addressed the degree of formality or specificity required for there to be an "official proceeding." To satisfy the knowledge element of the offense, the language of D.C.Code § 22–703(a) sets forth a subjective and an objective test with respect to whether an official proceeding "has begun," but sets forth a subjective test with respect to whether an official proceeding "is likely to be instituted." As the legislative history notes, "to sustain a conviction under this provision, it is necessary to prove at the time the defendant tampered with the evidence, he or she knew a proceeding was likely to be instituted if such a proceeding had not in fact begun." Committee on the Judiciary, Council of the District of Columbia, Extension of Comments on Bill No. 4–133: the District of Columbia Theft and White Collar Crimes Act of 1982, at 104 (1982) (enacted as D.C. Law No. 4–164). Because the object of the knowledge element of the offense is an "official proceeding," there must be a meaningful distinction between concealment to avoid detection by a suspect, *i.e.* concealment to *prevent* an official proceeding from ever being instituted, and the concealment of evidence that constitutes tampering, *i.e.* concealment which occurs *after* an individual knows or has reason to know that an official proceeding has begun or knows that such a proceeding is likely to be instituted, the purpose of which is to make that evidence unavailable to the proceeding. We are aware that some courts interpreting similar statutes have held that even absent police presence or formal investigation, "one who has committed a criminal act and then conceals or removes the evidence of his crime does so in contemplation that the evidence would be used in an official proceeding which might be instituted against him." *Burdell*, 990 S.W.2d at 633; *see also Frayer*, 684 P.2d at 929; *State v. Foreshaw*, 214 Conn. 540, 572 A.2d 1006, 1012 (1990); *Palmer*, 674 N.Y.S.2d at 569. Whether such an interpretation is consistent with the language and intent of § 22–703(a) is an open question. Notwithstanding such broad language, in most of these cases, as well as most other published tampering cases, the tampering occurred when the appellant knew he or she was being investigated, see *supra* (cases cited in text), or involved *malum in se* crimes from which it may be reasonable to infer the likelihood of an investigation from the nature of the crime, see, e.g., *Foreshaw*, 572 A.2d at 1012 (mur-

## III. *Jury Instructions*

Timberlake lastly argues that the trial court committed reversible error by failing to adopt his complete proffered instruction concerning the tampering charge. Timberlake submitted, and the court read, the following portion of his defense theory instruction:

Mr. Timberlake in his defense asserts that he is not guilty of the offense of tampering with physical evidence because he did not know and had no reason to know that an official proceeding was likely to be instituted against him, and consequently that he lacked the specific intent to impair the integrity of the evidence or its availability for use in that official proceeding.

The remaining portion of Timberlake's proposed defense theory instruction, which the court refused to read despite Timberlake's objection, read as follows:

Mr. Timberlake has acknowledged concealing the drugs in his mouth in order to avoid possible detection by the police. This is a crucial distinction. A person does not commit the offense of tampering with physical evidence merely because he conceals evidence which would incriminate him if discovered. Rather the accused must already believe, or have reason to believe, that he will be arrested or otherwise investigated at the time he seeks to conceal or destroy the evidence.

■ This court has held that a "defendant in a criminal case is entitled to a jury instruction on any issue fairly raised by the evidence." *Jackson v. United States,* 600 A.2d 90, 93 (D.C.1991). However, "the trial court's failure to give a requested instruction is not reversible error where the instructions given properly inform the jury of the applicable legal principles in-

volved." *Stewart v. United States,* 687 A.2d 576, 578 (D.C.1996).

■ Here, the trial court rejected the final sentence of the proffered instruction as a mis-statement of the law. The statute does not require that an individual be the focus of the official proceeding in question, only that the individual tamper with evidence knowing or having reason to believe that an official proceeding has begun or is likely to be instituted. There is no statutory requirement that the individual charged under the statute be the focus of the official proceeding. The statute does require there to be a nexus between the evidence allegedly tampered with and the official proceeding that the individual believes has begun or is likely to be instituted. Thus, it is true, as Timberlake argues, that his possession of drugs would be relevant principally to an investigation of Timberlake himself. The trial court, however, allowed Timberlake to argue that under the facts of this case he had to know or reasonably believe that he was the focus of investigation when he concealed the drugs.

■ The trial court also rejected the third sentence of Timberlake's proposed instruction, as a mis-statement of law. We disagree. As we have explained above, the proposed instruction that "a person does not commit the offense of tampering with physical evidence merely because he conceals evidence which would incriminate him if discovered," is a correct statement of the law when viewed in the context of the next sentence in the proposed instruction, which covered the knowledge element. Notwithstanding that Timberlake's proposed instruction was a correct statement of the law, we are confident that the trial court's instructions adequately covered all the statutory elements and informed the jury of the applicable legal

der); *Phillips v. Commonwealth,* 17 S.W.3d 870, 876 (Ky.2000) (wanton murder); *State v. McKimmie,* 232 Mont. 227, 756 P.2d 1135, 1137–38 (1988) (homicide), *overruled on other*

*grounds, State v. Rothacher,* 272 Mont. 303, 901 P.2d 82 (1995); *State v. Smith,* 927 P.2d 649, 652 (Utah Ct.App.1996) (manslaughter).

principles. Under these circumstances the trial court's failure to give the requested instruction does not require reversal.

Accordingly, the judgment of conviction is

*Affirmed.*