Ricky D. WRIGHT, Appellant,

v.

UNITED STATES, Appellee.

No. 05–CF–1236.

District of Columbia Court of Appeals.

Argued June 4, 2007.

Decided June 28, 2007.

Ian A. Williams, Washington, DC, appointed by the court, for appellant.

Allison Barlotta, Assistant United States Attorney, for appellee. Jeffrey A. Taylor, United States Attorney, and Roy W. McLeese III and Michael A. Humphreys, Assistant United States Attorneys, were on the brief, for appellee.

Before RUIZ, REID and KRAMER, Associate Judges.

RUIZ, Associate Judge:

Following a jury trial, Ricky D. Wright was convicted on one count of possession of an unregistered firearm, in violation of D.C.Code § 7–2502.01(a) (2001), and one count of carrying a dangerous weapon outside the home or business, in violation of D.C.Code § 22–4504(a)(1). On appeal, he claims that the trial court erred by denying his motion for judgment of acquittal as to both counts. We disagree and affirm the judgment below.

**I.**

We review a denial of a motion for judgment of acquittal under "the same standard as that applied by the trial court in determining whether the evidence was sufficient to convict." *Timberlake v. United States,* 758 A.2d 978, 980 (D.C.2000) (citations and internal quotations omitted). We review the evidence in the light most favorable to the government "giving full play to the right of the jury to determine the credibility, weigh the evidence, and draw justifiable inferences of fact" and we draw no distinction between direct and

circumstantial evidence. *Id.* In fact, "circumstantial evidence may be more compelling than direct testimony." *Mills v. United States,* 599 A.2d 775, 780 (D.C.1991). To sustain the trial court's ruling, it is not necessary for us to find "that the government's evidence compel[s] a finding of guilt beyond a reasonable doubt, nor that the government negate every possible inference of innocence." *Timberlake,* 758 A.2d at 980. In sum, "[r]eversal of the trial court's denial of appellant's motion for judgment of acquittal is warranted only where there is no evidence upon which a reasonable [juror] could infer guilt beyond a reasonable doubt." *Id.* at 981. (citations and internal quotations omitted).

■ We reject appellant's claim that there was insufficient evidence upon which the jury could find appellant possessed the sawed-off shotgun, which is at the center of both weapons-related charges. At trial, the government presented testimony that appellant had actual possession of the sawed-off shotgun prior to its being recovered by the police. On July 29, 2004 at approximately 9:45 p.m., Metropolitan Police Department (MPD) Officers Adrian Harris and Jacob Labofish were on routine patrol in their unmarked police car. Two additional MPD officers were following behind in a marked police car. After appellant walked by the unmarked police car, Officer Harris, who was driving, saw appellant reach inside the waistband of his pants, pull out an object, and set the object down on a nearby fence. As appellant set the object down on the fence, Officers Harris and Labofish testified that they

heard the sound of "something metal" hitting the chain link fence. Although it was dark outside, Officer Harris testified that there was sufficient lighting for him to see appellant clearly. At that point, as appellant began to walk in the opposite direction, Officers Harris and Labofish exited the car and Officer Harris recovered the unloaded, sawed-off shotgun from behind the place on the fence where Officer Harris had seen appellant place the object after removing it from his waistband. Subsequent investigation revealed that appellant was not licensed to own or possess the shotgun.

Appellant avers that only Officer Harris actually saw appellant place the gun on the fence, that Officer Harris's view was obstructed and that the officers would have been unable to hear a "clanking" sound from almost thirty feet away on a busy street. However, those claims, which the appellant also made at trial, are uniquely for the jury to assess. *See Peterson v. United States,* 657 A.2d 756, 760 (D.C. 1995) (fact and credibility determinations are decidedly jury questions). At bottom, appellant's claim that the government offered insufficient evidence to support appellant's possession of the shotgun is a challenge to the accuracy and credibility of the officers' testimony. Viewed in the light most favorable to the government, Officers Harris's and Labofish's testimony sufficed to allow a jury to find appellant had possessed the sawed-off shotgun before he discarded it, and therefore, to allow a reasonable jury return a guilty verdict.[1]

---

1. Moreover, with regard to the unregistered firearm possession count, since appellant did not move for a judgment of acquittal on this charge, arguably, only plain error below will be grounds for a reversal. *See United States v. White,* 303 U.S.App.D.C. 54, 58, 1 F.3d 13, 17 (1993) (applying plain error standard); *but see Abdulshakur v. District of Columbia,* 589 A.2d 1258, 1264 (D.C.1991) (noting that some jurisdictions apply that standard in this situation while others do not, and expressly declining to adopt either approach for this jurisdiction). However, we need not reach that question as we conclude that there was sufficient evidence to allow the jury to return a guilty verdict. *A fortiori,* the trial court did not commit any error in allowing the case to be submitted to the jury.

*See Gibson v. United States,* 792 A.2d 1059, 1066 (D.C.2002) ("This court has often and consistently held that the testimony of a single witness is sufficient to sustain a criminal conviction, even when other witnesses may testify to the contrary.").

## II.

 We also reject appellant's claim that the government failed to prove what he contends is an essential element of the offense of carrying a dangerous or deadly weapon: appellant's intent to use the shotgun as a dangerous weapon. D.C.Code § 22–4504(a), in pertinent part, reads:

No person shall carry within the District of Columbia either openly or concealed on or about their person, a pistol, without a license issued pursuant to District of Columbia law, or any deadly or dangerous weapon capable of being so concealed. Whoever violates this section shall be punished as provided in § 22–4515, except that: (1) A person who violates this section by carrying a pistol, without a license issued pursuant to District of Columbia law, or any deadly or dangerous weapon, in a place other than the person's dwelling place, place of business, or on other land possessed by the person, shall be fined not more than $5,000 or imprisoned for not more than 5 years, or both.

D.C.Code § 22–4504(a) (2001). Accordingly, to prevail on this charge, the government must prove 1) that the defendant carried a "deadly or dangerous weapon" either openly or concealed on his person,

and 2) that the weapon is capable of being concealed. In cases involving a pistol, the government must also prove that the defendant carried the pistol without a license. In addition, to impose the higher penalty, the government must prove that the defendant carried the object outside his home or business. *See McCullough v. United States,* 827 A.2d 48, 58 (D.C.2003); *Ray v. United States,* 620 A.2d 860, 864 (D.C. 1993). Appellant argues that the government's evidence was insufficient to prove that appellant intended to use the shotgun, which was unloaded, as a dangerous weapon.[2] The intent necessary, however, is not the intent to commit an unlawful act, *see Mackey v. United States,* 451 A.2d 887, 889 (D.C.1982), but rather the intent to carry an object that is a dangerous weapon. *See Monroe v. United States,* 598 A.2d 439, 440 (D.C.1991). In fact, we have held that an otherwise lawful object can be a dangerous weapon even when there is no present intent to use it as a dangerous weapon. *See id.* (noting that even though the defendant was attempting to check a knife with security officers upon entering a government building and therefore had no intent to use it as a weapon imminently, surrounding circumstances suggested that his primary purpose for possessing the knife was to use it as a weapon).

 "A deadly or dangerous weapon is one which is likely to produce death or great bodily injury by the use made of it. Such instrument may be dangerous in its ordinary use as contemplated by its design and construction, or where the purpose of

---

**2.** We note that the trial judge instructed the jury, as to intent, that:

The government must prove that the defendant intended to use the object as a deadly or dangerous weapon. In deciding this issue, consider all the circumstances surrounding the possession and use of the object. You may consider, among other things, the design or construction of the object, the defendant's conduct prior to his

arrest; and the time and place the defendant was found in possession. There is no requirement that there be evidence that the defendant specifically intended to use the object for an unlawful purpose.

As we discuss in the text, in the case of a sawed-off shotgun, this instruction was unnecessary to the extent it required a separate, additional finding that the defendant intended to use it as a deadly or dangerous weapon.

carrying the object, under the circumstances, is its use as a weapon." *Scott v. United States*, 243 A.2d 54, 56 (D.C.1968). Only in cases where the charge of carrying a dangerous weapon is based on an item that has some useful natural purpose (other than to inflict injury) has this court required the government to prove that the defendant intended to use the object in question *as* a dangerous weapon. *See Monroe*, 598 A.2d at 440 (requiring the government to prove that the defendant intended to use a knife—a "K–Bar–Nine" with a six-inch blade—as a dangerous weapon). Unlike in *Monroe*, however, no such intent is needed where the item *is* nothing but a dangerous weapon. A sawed-off shotgun—whether loaded or not—is an inherently dangerous object because of "its ordinary use as contemplated by its design and construction." [3] *Scott*, 243 A.2d at 56; *see* D.C.Code § 22–4514 (prohibiting the possession of sawed-off shotguns); *see also McLaughlin v. United States*, 476 U.S. 16, 17–18, 106 S.Ct. 1677, 90 L.Ed.2d 15 (1986) (noting that even an unloaded gun is a dangerous weapon because a "gun is an article that is typically and characteristically dangerous; the use for which it is manufactured and sold is a dangerous one, and the law reasonably may presume that such an article is always dangerous even though it may not be armed at a particular time or place."); *cf. Strong v. United States*, 581 A.2d 383, 386 (D.C.1990) (finding that even though an air pistol looked like a .357 magnum handgun, the air pistol was incapable of firing a bullet, and therefore, not inherently dangerous). Moreover, since the plain language of D.C.Code § 22–4514 flatly prohibits the possession of sawed-off shotguns,[4] the additional act of carrying such a weapon, if it can be concealed, as a matter of law evidences appellant's unlawful intent as there are no lawful uses for such an item. *See, e.g., Lewis v. United States*, 767 A.2d 219, 224 (D.C.2001) (citing *Scott*, 243 A.2d at 56) (finding that D.C.Code § 22–4514 clearly bans dangerous objects which have no otherwise legitimate purpose); *McIntosh v. Washington*, 395 A.2d 744, 752 (D.C.1978) (noting that under D.C.Code § 22–4514, the possession of a sawed-off shotgun is banned as an inherently dangerous weapon); *cf.* D.C.Code § 22–4514(b) (requiring "intent to use unlawfully against another" in the case of possession of "an imitation pistol or a dagger, dirk, razor, stiletto or knife with a blade longer than 3 inches or other dangerous weapon"). Since an unloaded, sawed-off shotgun is an inherently dangerous weapon, the government did not need to offer further proof that appellant intended to use the shotgun as a dangerous weapon in order to defeat appellant's motion for judgment of acquittal.

Accordingly, for the reasons stated, the judgment of conviction is

*Affirmed.*

---

**3.** We distinguish between an unloaded weapon and an inoperable one. After recovering the shotgun, police confirmed that it was indeed capable of firing a shot when loaded with ammunition.

**4.** D.C.Code § 22–4514(a) prohibits the possession (with an exception for law enforcement officers not here applicable) of "any machine gun, sawed-off shotgun, or any instrument or weapon of the kind commonly known as a blackjack, slungshot, sand club, sandbag, switchblade knife, or metal knuckles, nor any instrument, attachment, or appliance for causing the firing of any firearm to be silent or intended to lessen or muffle the noise of the firing of any firearms."