*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 11-FS-1320

IN RE D.R., APPELLANT.

Appeal from the Superior Court
of the District of Columbia
(DEL-2009-11)

(Hon. Patricia A. Broderick, Trial Judge)

(Argued September 18, 2013                    Decided July 31, 2014)

*Cynthia Nordone* for appellant.

*Janice Y. Sheppard*, Assistant Attorney General, with whom *Irvin B. Nathan*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General, and *Rosalyn C. Groce*, Deputy Solicitor General, were on the brief, for appellee.

Before GLICKMAN and FISHER, *Associate Judges*, and STEADMAN, *Senior Judge*.

FISHER, *Associate Judge*:    Appellant D.R., a juvenile, was found to be involved in four criminal offenses related to his possession and brandishing of a large knife or machete. On appeal, he claims that he was denied the effective assistance of counsel and that there was insufficient evidence to support three of the adjudications against him.

Following oral argument, we remanded the record to the trial court for findings on the ineffective assistance claim.[1] After considering the trial record, Judge Broderick found that D.R.'s trial counsel was ineffective and informed us that she would be inclined to grant a new trial. *See Smith v. Pollin*, 194 F.2d 349, 350 (D.C. Cir. 1952). We now remand the case (restoring jurisdiction to the Superior Court) so that the trial court may vacate D.R.'s adjudications and grant a new trial in accordance with its findings. In doing so, we pause to consider D.R.'s claims of evidentiary insufficiency, since principles of double jeopardy preclude the government from prosecuting D.R. a second time on any charge that was not supported by sufficient evidence in the first trial. *See Kelly v. United States*, 639 A.2d 86, 88 (D.C. 1994) (citing *Burks v. United States*, 437 U.S. 1, 18 (1978)). We conclude that D.R.'s adjudication for carrying a dangerous weapon was not supported by sufficient evidence.

## I. The Factual and Statutory Background

---

[1] D.R. raised this claim on direct appeal because relief is not available under D.C. Code § 23-110 unless the movant is "in custody under sentence of the Superior Court." D.C. Code § 23-110 (a) (2011 Supp.). Although probation constitutes custody for purposes of the statute, *see Snell v. United States*, 754 A.2d 289, 291-92 (D.C. 2000), D.R.'s three-month probation expired before his new lawyer was able to pursue his claim of ineffective assistance of counsel.

In September 2011 fourteen-year-old D.R. was involved in a heated altercation between his family and their neighbors. According to evidence presented by the government, D.R. approached one of his neighbors, raised a large knife above his head, and angrily threatened to cut her insides out. In response, the neighbor lifted up her shirt (exposing her midriff) and told D.R. to "do what he's going to do." The police never found the knife, but witnesses described it as a "sword" or "machete"—approximately eighteen to twenty-four inches in length with a wooden handle, a curved blade, and a pointed tip. Crediting this testimony, the trial judge determined that D.R. had been involved in four criminal offenses: assault with a dangerous weapon ("ADW"), carrying a dangerous weapon ("CDW"), possession of a prohibited weapon, and felony threats.

D.R.'s main claim of insufficiency relates to the CDW charge.[2] The statute defining that offense provides that "[n]o person shall carry within the District of

---

[2] D.R. also challenges the sufficiency of the evidence supporting the counts of ADW (D.C. Code § 22-402 (2001)) and felony threats (D.C. Code § 22-1810 (2001)). Specifically, he claims that the woman he threatened did not exhibit fear. We have no difficulty rejecting this argument. *See Parks v. United States*, 627 A.2d 1, 5 (D.C. 1993) (noting that an assault conviction does not require "factual proof that the victim actually experience[d] apprehension or fear"); *Postell v. United States*, 282 A.2d 551, 553 (D.C. 1971) (holding that it does not matter "whether or to what degree the threat engenders fear or intimidation in the intended victim"). When an ADW charge is based on an intent-to-frighten assault, the government must show that the defendant committed some threatening act that

(continued…)

Columbia either openly or concealed on or about their person, a pistol, without a license issued pursuant to District of Columbia law, or any deadly or dangerous weapon capable of being so concealed." D.C. Code § 22-4504 (a) (2011 Supp.). D.R. argues that the government did not prove that the knife he wielded was capable of being concealed on or about his person.

When Congress enacted the CDW statute in 1932, the law applied only to weapons that were actually concealed. Act of July 8, 1932, Pub. L. No. 72-275, § 4, 47 Stat. 650, 651.[3] Congress amended the statute in 1943 to provide that no person shall carry "either openly or concealed on or about his person . . . any

---

(…continued)

would "lead a reasonable person to believe he was in imminent danger of bodily harm." *Joiner-Die v. United States*, 899 A.2d 762, 765 (D.C. 2006). Similarly, to prove the offense of threats, the government must show that the defendant uttered words "of such a nature as to convey fear of bodily harm or injury to the ordinary hearer." *Carrell v. United States*, 80 A.3d 163, 171 (D.C. 2013) (quoting *Campbell v. United States*, 450 A.2d 428, 431 n.5 (D.C. 1982)). Here, the government produced evidence showing that, during the midst of a heated argument, D.R. brandished a large knife and angrily threatened to eviscerate his neighbor with it. This evidence is certainly sufficient to support a finding that D.R.'s statements would have put an "ordinary hearer" or "reasonable person" in apprehension of bodily harm. Appellant does not question that the knife qualifies as a dangerous weapon.

[3] The 1932 statute replaced a provision first enacted in 1892, which prohibited the carrying of a concealed dangerous or deadly weapon "about" the person. *See Gamble v. United States*, 30 A.3d 161, 168 (D.C. 2011) (tracing evolution of statute); *United States v. Pritchett*, 470 F.2d 455, 456-57 (D.C. Cir. 1972) (same).

deadly or dangerous weapon capable of being so concealed." Act of Nov. 4, 1943, Pub. L. No. 78-182, 57 Stat. 586, 586. In 1994, to make the statute gender neutral, the Council of the District of Columbia replaced the phrase "his person" with "his or her person." *See* D.C. Law 10-119 § 15 (c) (May 21, 1994). Subsequently, the Council changed "his or her person" to "their person," *see* D.C. Law 10-151 § 302 (Aug. 20, 1994), which is how the statute now reads.

This court has not yet had occasion to construe the statutory language referring to weapons "capable of being so concealed." D.C. Code § 22-4504 (a) (2011 Supp.). We have upheld CDW convictions in several cases involving large knives and other large weapons, but it does not appear that those defendants challenged their CDW convictions by claiming that the weapon at issue was too large to be "concealed on or about their person." *Id.* For instance, in *Gorbey v. United States*, we upheld convictions for two counts of CDW where the defendant had walked down a public street with "a shotgun in his hand and a sword on his back." 54 A.3d 668, 675, 699-700 (D.C. 2012). Similarly, we have affirmed the CDW adjudication of a juvenile who struck a victim with an aluminum baseball

bat. *In re P.F.*, 954 A.2d 949, 950-51 (D.C. 2008). A number of other CDW cases have likewise involved weapons of considerable size.[4]

It is not apparent to us why none of the defendants in these cases raised a claim like the one D.R. now advances. Perhaps a partial explanation may be found in the very name of the offense, "Carrying a Dangerous Weapon." A weapon may certainly be classified as "dangerous" even if it is not capable of being concealed on or about a person. Thus, the legal scope of CDW is not as broad as its common name suggests. In any event, D.R.'s claim presents us with an open question of statutory interpretation.

## II. Construing the Statute

The language of the statute makes it clear, and this court has acknowledged, that to convict a defendant of CDW, the government must prove "that the weapon is capable of being concealed." *Wright v. United States*, 926 A.2d 1151, 1154

---

[4] *See, e.g.*, *Coleman v. United States*, 948 A.2d 534, 540 (D.C. 2008) (rifle-machine gun); *Ebron v. United States*, 838 A.2d 1140, 1145 (D.C. 2003) (AK-47); *Harper v. United States*, 582 A.2d 485, 490 (D.C. 1990) (knife with a blade "ten to twelve inches in length"); *Fersner v. United States*, 482 A.2d 387, 389 (D.C. 1984) (hatchet); *Mackey v. United States*, 451 A.2d 887, 888 & n.1 (D.C. 1982) (twelve-inch "machete-type knife"); *Coleman v. United States*, 379 A.2d 710, 711 (D.C. 1977) (shotgun).

(D.C. 2007). Moreover, every successive version of the standard jury instructions for CDW has referred to the government's burden of showing that the weapon carried was concealable.[5] Unfortunately, none of these pattern jury instructions explains how a weapon's concealability is to be determined.

When § 22-4504 states that no person shall carry a dangerous weapon "capable of being . . . concealed" "on or about their person," who is the "person" referred to? Is it the actual defendant, or is it a hypothetical average-sized person? In answering these questions, our objective "is to ascertain and give effect to the legislative intent and to give legislative words their natural meaning." *Grayson v. AT&T Corp.*, 15 A.3d 219, 237 (D.C. 2011) (en banc) (quoting *Banks v. United States*, 359 A.2d 8, 10 (D.C. 1976)).

Here, as in the trial court, the government has relied on *United States v. Powell*, 423 U.S. 87 (1975). In that case, the Supreme Court construed a federal law prohibiting the mailing of any firearm "capable of being concealed on the person." *Id.* at 88, 91-94 (quoting 18 U.S.C. § 1715 (1970)). The Court rejected the argument that "the 'person' referred to in the statute to measure capability of

---

[5] *See* Criminal Jury Instructions for the District of Columbia, Nos. 65 (1st ed. 1966), 4.81 (2d ed. 1972), 4.81 (3d ed. 1978), 4.70 (4th ed. 1993), 4.70 (4th ed. rev. 2008), and 6.500 (5th ed. 2009).

concealment" was the individual defendant in each case. *Id.* at 93. Instead, attributing "the commonsense meaning" to Congress, the Court concluded that the statute referred to "an average person garbed in a manner to aid, rather than hinder, concealment of the weapons." *Id.* Applying this construction, the Court held that "a properly instructed jury could have found [a] 22-inch sawed-off shotgun . . . to have been a '(firearm) capable of being concealed on the person.'" *Id.* at 91 (quoting 18 U.S.C. § 1715).

Although the CDW statute and the statute construed in *Powell* are similar in some respects, there are important differences between the two. Most noticeably, the statutes operate in distinct contexts by proscribing different types of conduct (carrying weapons as opposed to mailing them). When a violation of the CDW statute is in progress, the weapon at issue is necessarily located "on or about [the offender's] person." D.C. Code § 22-4504 (a) (2011 Supp.). By contrast, when a violation of the *Powell* statute is in progress, there may not be any physical proximity whatsoever between the firearm at issue and a particular offender. In the absence of such proximity, it is natural for an analysis of concealability to focus on "an average person." *Powell*, 423 U.S. at 93.

Indeed, if the *Powell* Court had not focused on "an average person," it would have been left to question "whether the person referred to in the statute to measure capability of concealment was to be the person mailing the firearm, [or] the person receiving the firearm." *Id.* at 93 (quoting *United States v. Powell*, 501 F.2d 1136, 1137 (9th Cir. 1974)) (internal quotation marks omitted). And even if, hypothetically, one of those actual individuals could be identified as "the person referred to in the statute," it would not be clear *when* "to measure capability of concealment" with respect to that person. Would it matter what the individual was wearing when the firearm was mailed? When it was received? When it was discovered? At any point while the firearm was in the mail stream? These difficult questions do not arise in an analysis focused on "an average person garbed in a manner to aid . . . concealment of the weapons."

Importantly, however, those difficult questions do not arise in the CDW context even when analysis of a weapon's concealability focuses on an actual defendant. Aside from a hypothetical figure, the only "person" that § 22-4504 can possibly be understood as referring to is the actual individual carrying a dangerous weapon. Moreover, the statute's main thrust and plain language dispel any doubt regarding when a weapon must be capable of concealment. The nub of the offense is carrying a weapon, an active form of conduct that delimits the scope of the

crime's other elements. And the statutory phrase, "capable of being so concealed," refers to weapons that individuals can actually "*carry* . . . concealed on or about their person." D.C. Code § 22-4504 (a) (emphasis added). Accordingly, for purposes of CDW, a weapon must be capable of concealment *at the time it is carried*. All told, determining a weapon's concealability in relation to an actual person is much more natural here than it would have been in *Powell*.

An even more important consideration is textual in nature. The *Powell* statute covers firearms "capable of being concealed on *the* person," *see id.* at 318 (emphasis added), whereas our statute provides that no person shall carry a dangerous weapon capable of being concealed "on or about *their* person." D.C. Code § 22-4504 (a) (2011 Supp.) (emphasis added). In place of the term "their person," previous versions of our statute have employed the more natural words "his person" or "his or her person." *See* Act of Nov. 4, 1943, Pub. L. No. 78-182, 57 Stat. 586, 586; D.C. Law 10-119 § 15 (c) (May 21, 1994). But the meaning is the same. The possessive pronouns "his," "her," and "their" all signal attention to the particular defendant rather than a hypothetical average person.

In fact, the 1943 version of the statute—which stated that no person shall carry a weapon capable of being concealed "on or about *his* person"—also used the

word "his" in an integrally related clause, creating an exception for anyone carrying such a weapon "in *his* dwelling house." Act of Nov. 4, 1943, Pub. L. No. 78-182, 57 Stat. 586, 586. The phrase "his dwelling house" of course refers to the dwelling house of an actual person. Thus, to hold that the term "his person" refers to a hypothetical figure, we would need to conclude that Congress intended for the word "his" to have two different meanings within the same statutory sentence. We think such a reading would fail to give the "legislative words their natural meaning." *Grayson*, 15 A.3d at 237.

Moreover, what legislative history we have shows that in 1943, when the relevant language was first adopted, Congress was responding to a concrete problem. The Attorney General of the United States had expressed concern that individuals were escaping conviction under the concealed carry statute by simply exhibiting their weapons whenever law enforcement officers approached. *See* H.R. Rep. No. 78-762, at 1 (1943); *see also* S. Rep. No. 78-408, at 1 (1943). In those circumstances, the weapon would actually have been concealed moments before the police arrived. Congress responded by prohibiting the carrying of such weapons "either openly or concealed," provided the weapon was capable of being concealed "on or about" the person carrying it. Act of Nov. 4, 1943, Pub. L. No. 78-182, 57 Stat. 586, 586. This response, in our view, targets weapons that are

capable of being concealed on actual persons, under particularized circumstances, and at the time the weapons are carried.

For the foregoing reasons, we conclude that the context, purpose, and plain language of § 22-4504 do not favor the type of construction that the Supreme Court gave to the statute in *Powell* (focusing on "an average person garbed in a manner to aid . . . concealment of the weapons"). 423 U.S. at 93. Rather, in reading § 22-4504, we interpret the term "their person" as a reference to the particular defendant's person. Thus, as an element of CDW, the government must prove beyond a reasonable doubt that a defendant would have been capable of actually concealing her weapon on or about her person while she was carrying the weapon. Clearly, a person wearing trousers and a jacket will be able to conceal a larger weapon than someone wearing shorts and a tee shirt. Consequently, evidence regarding the clothing a defendant wore while carrying the weapon will be relevant to the question of whether the weapon was concealable. That question is an element of the offense that must be resolved by the finder of fact.

We emphasize that our holding today will have no effect on prosecutions for carrying a pistol without a license ("CPWL"), an offense set forth in § 22-4504 alongside CDW. The statute treats pistols differently than other dangerous

weapons. To prove the offense of CPWL, the government need not produce any evidence that a given pistol was capable of being concealed. *See* D.C. Code § 22-4504 (a) (2012 Repl.). This is unsurprising, since the statutory definition of "pistol" already imposes a limit on the size of the weapon. A "pistol" is "any firearm originally designed to be fired by use of a single hand or with a barrel less than 12 inches in length." D.C. Code § 7-2501.01 (2012 Repl.) (cross-referenced in D.C. Code § 22-4501 (6) (2012 Repl.)).

Additionally, we note that another criminal statute in the District of Columbia already prohibits the possession of any "dangerous weapon" ("with intent to use [it] unlawfully against another") regardless of whether the weapon is capable of being concealed. D.C. Code § 22-4514 (b) (2012 Repl.) (proscribing possession of a prohibited weapon—PPW (b)). Indeed, in this appeal, D.R. has not challenged the sufficiency of the evidence to prove him guilty of PPW (b). Separately, § 22-4504 (a-1) provides, without any requirement of concealability, that "no person shall carry within the District of Columbia a rifle or shotgun." In light of these statutes, we do not think our holding today will significantly increase the ability of individuals to carry dangerous weapons—even large ones—in the District of Columbia without facing criminal liability.

### III.  Applying the Statute

"In evaluating the sufficiency of the [government's] proof, we must view the evidence in the light most favorable to sustaining the judgment." *Shewarega v. Yegzaw*, 947 A.2d 47, 52 (D.C. 2008).  However, "evidence is insufficient, if, in order to convict, the [finder of fact] is required to cross the bounds of permissible inference and enter the forbidden territory of conjecture and speculation." *Curry v. United States*, 520 A.2d 255, 263 (D.C. 1987).  In this case, the prosecutor paid scant attention to proving that the knife D.R. wielded was capable of being concealed on or about his person, and the court made no specific findings on that question.  The government acknowledged in its closing argument that to prove CDW, it needed to establish that the knife was capable of being concealed.  However, in arguing that it had carried that burden, the government offered little more than a broad invocation of the Supreme Court's decision in *Powell*.

Evidence presented during the trial established that the knife D.R. wielded was between eighteen and twenty-four inches long, but we have not found any testimony describing appellant's size or what he was wearing on the day in question.  We know from the record that the altercation took place in the early evening of September 3, which, if anything, supports an inference that D.R. was

*not* wearing the type of heavy clothing that might have enabled him to conceal the knife on his person. Further, the fact that he was only fourteen years of age suggests that he was not yet fully grown. We therefore hold that D.R.'s CDW adjudication was not supported by sufficient evidence. The double jeopardy clause bars a new trial of this offense. *See Kelly*, 639 A.2d at 88 (citing *Burks*, 437 U.S. at 18).

## IV. Conclusion

Appellant has not challenged the sufficiency of the evidence to prove him guilty of possessing a prohibited weapon. We hold that there was sufficient evidence to sustain the adjudications against D.R. on the counts of ADW and felony threats. However, there was insufficient evidence to sustain the adjudication for CDW. We therefore vacate the CDW adjudication and remand the case for further proceedings consistent with this opinion.

*It is so ordered.*